(108 N. W. 33.)

---

STATE OF NORTH DAKOTA, EX REL. CHARLES H. MITCHELL V. M. S. MAYO AS TREASURER OF CASS COUNTY, NORTH DAKOTA.

Opinion filed June 1, 1905.

**Municipal Corporations — Organization.**

1. Chapter 62, page 91, Laws 1905, relating to the organization and government of cities, is a revision and amendment of the general law on that subject, and it became operative upon all cities previously organized under the general law, without any action by such cities.

**Constitutional Law — Class Legislation — City Taxes — Penalty and Interest.**

2. Section 124 of chapter 62, page 122, Laws 1905, to the extent that it requires the county treasurer to pay over, to cities organized under the general law, the interest and penalties on city and city school taxes collected by the county treasurer, is an unjust and arbitrary discrimination in favor of the taxpayers in such cities against those of other taxing districts, and is therefore invalid, because in contravention of the constitutional inhibitions against class legislation.

Appeal from District Court, Cass County; *Pollock, J.*

Application by the state, on the relation of Charles H. Mitchell, for writ of mandamus to M. S. Mayo, treasurer of Cass county. Judgment for relator, and defendant appeals. Reversed.

*Barnett & Richardson,* for appellant.
*Seth Newman,* for respondent.

ENGERUD, J. This is a proceeding by mandamus, brought in the name of the state, by the relator, as treasurer of the city of Fargo, to compel the defendant, as treasurer of Cass county, to pay over to the relator the amount of interest and penalties on the city and city school taxes, collected for said city by the defendant. The relator bases his right to the relief demanded upon section 124 of chapter 62, p. 122, Laws of 1905. That section reads as fol-

lows: "The county treasurer of such county shall collect and en-
force the collection of the city and school tax with and in the
same manner as other taxes, and shall pay over to the city treasurer
on the first of every month on demand, all such taxes so collected
during the preceding month, with interest and penalties col-
lected thereon, and shall forthwith notify the city auditor of the
amount so paid over. He shall take duplicate receipts for all
such amounts so paid to the city treasurer, one of which shall be
forthwith sent to the city auditor." Chapter 62, p. 91, Laws 1905,
of which the section quoted is a part, is entitled "An act for the
organization and government of cities and to provide for the limi-
tation of action to vacate special assessments heretofore made." It
was approved February 28, 1905, and, by virtue of an emergency
clause, took effect immediately upon its approval. The defendant
admits that he collected and refused to pay over the interest and
penalties in question, but denies that the relator is entitled thereto
for several reasons, only two of which we deem it necessary to dis-
cuss. These two propositions are: First, that chapter 62, p. 91,
Laws 1905, does not become operative upon the city of Fargo until
its inhabitants adopt its provisions by reorganizing under this law;
second, that section 124, so far as it purports to give the interest
and penalties on city and city school taxes to the city, is unconstitu-
tional. The trial court heard the evidence submitted and awarded
a peremptory writ of mandamus as prayed for by relator. The
defendant appealed from the judgment. A statement of the case
was settled, wherein the appellant demanded a new trial of all
issues, and also specified certain alleged errors of law. A question
arose on the argument, as to whether this court should try the case
anew, under section 5630 (Rev. Codes, 1899), or review it on the
specifications of error. It is unnecessary to decide that question,
because the propositions which we deem decisive of the case are
such that they appear upon the face of the judgment roll without
any statement of the case. The facts are not in dispute. It is
simply a question as to whether the facts alleged and found entitle
the relator to a peremptory writ of mandamus.

We shall take up the defendant's propositions in the order
above stated. The appellant's argument is that chapter 62 is whol-
ly a new law for the organization and government of cities; that
is, to take effect only when the inhabitants of a previously organ-
ized village or city shall see fit to organize under it. They con-

tend that cities organized under the general law of 1887 continued under that law until they elected to abandon that form of organization and reorganize under the new law of 1905. Such a construction of this law is wholly untenable. A bare inspection of its provisions discloses that it is a mere revision and amendment of the general law heretofore in force relating to the organization and government of cities. That law was first enacted in 1887, as chapter 73, p. 190, Laws 1887. It was incorporated in the Revised Codes of 1895 as chapter 28 of the Political Code. A few changes were made by that revision, and there have been several amendments since. Comparison of the act of 1905 with the law theretofore in force discloses that the new act repeals all former laws on the subject and re-enacts them with some changes, most of which are in minor particulars. The most important changes made are in relation to the procedure in levying and collecting special assessments for local improvements. In all its main features the general law relating to the organization and government of cities remains the same as it was before. The new act has corrected many inconsistencies and defects apparent in the former law, and has brought together and made into a single statute the original city organization act and all subsequent amendments, including those made by the legislature of 1905. The title of the law would have been more appropriate if it had been styled "An act revising and amending chapter 28 of the Political Code as amended since 1895." The law embodied in the act is new only to the extent that it changes the law formerly existing. To the extent that it re-enacts the provisions of the former law, it is a mere continuation of those provisions. Lumber Co. v. Lee, 7 N. D. 135, 73 N. W. 430; City of Fargo v. Ross, 11 N. D. 369, 92 N. W. 449. That this was the intent of the legislature is stated in express terms in section 192 of the act.

Fargo is a city organized under the general law, and hence the revision of that law is operative on the city without any action by the municipality. The relator is entitled to the relief prayed for, unless the provisions of section 124 contravene some constitutional limitation. Under the laws of this state, the collection of all taxes, including special assessments for local improvements in cities, is committed to the officers of the county in which the property taxed is situated. The taxes levied by the several cities, villages, townships and school districts are reported to the county

auditor, who enters them upon the tax lists together with the state and county taxes. The county treasurer is charged with the duty of collecting all the taxes so listed. For the purpose of collection, the aggregate of the items of each year's tax charged against any person or corporation, if the tax is on personal property, or against each description of land, if the tax is on real estate, is treated as a single entire demand, payable as such at a specified time. Certain interest and penalties for nonpayment are imposed and are fixed at a certain per cent. of the total amount of the taxes so listed, treated as a single demand, and are, of course, collected with and as part of the taxes proper. For the purpose of collection they are, indeed, part of the tax. Railway Co. v. Amrine, 10 Kan. 318; Burlington v. Railway Co., 41 Iowa, 134. Although the interest and penalties are properly treated as part of the tax for the purpose of collection, they do not strictly attach pro rata to each specific item or kind of tax which goes to make up the aggregate taxes upon which they are computed, so that the total interest and penalty must necessarily be apportioned pro rata to the several items of taxes charged, and be treated as an inseparable part of each item. The interest and penalty are imposed not by the several taxing districts, but by the laws of the state. They are not taxes in the strict sense, but are imposed for the purpose of inducing prompt payment of the taxes proper. The disposition of them, therefore, is within the control of the legislature. Board of Sedgwick v. Wichita (Kan. Sup.) 64 Pac. 621; City of New Whatcom v. Roeder (Wash.) 61 Pac. 767; Crookston v. County Com., 79 Minn. 283, 82 N. W. 586, 79 Am. St. Rep. 453.

The powers of the legislature in this respect must be exercised, however, in conformity with, and subject to the limitations imposed by, the constitution. When the act of 1905, now in question, was passed, the disposition of the interest and penalties on taxes was controlled by section 1260, Rev. Codes 1899, which reads as follows: "All penalty and interest collected on taxes shall belong to the county and become a part of the general fund, or such other fund as the county commissioners may direct; except the penalty and interest collected on special assessments due to cities, and all such penalties and interest shall be paid to the city thereunto entitled." This provision was adopted in 1899 (chapter 4, p. 8, Laws 1899), as an amendment of section 75 of the 1897 revenue law (Laws 1897, p. 285, c. 126), and restores substan-

tially the provisions on the same subject in the 1890 revenue law (section 69, c. 132, p. 376, Laws 1890). Under this provision, all the taxpayers throughout the county are alike benefited by the revenues derived from this source. It goes to reduce the amount necessary to levy on all the taxable property in the county for the general fund. If section 124 of the act of 1905 is effective as a modification of section 1260, Rev. Codes 1899, the unjust discrimination resulting therefrom in favor of city taxpayers and against taxpayers in the rural districts is apparent. The city taxpayers will share pro rata in the benefits of reduced taxation for the county general fund resulting from the contributions to that fund by the taxpayers of the villages, townships, and rural school districts throughout the county; but the latter are to be excluded from any share in like collections from the city taxpayers. The city taxpayers are to be given the exclusive enjoyment of the interest and penalties collected at the expense of the county from city taxpayers, but the county taxpayers must share the interest and penalties on taxes in the rural district with the city taxpayers. This is manifestly an unjust and unreasonable discrimination in favor of city property owners, and against those who own property outside the city limits. The act clearly contravenes section 11 of the Constitution, which declares that all laws of a general nature shall have a uniform operation, and is likewise an infringement of that part of section 20 which forbids the granting of any privilege or immunity to one citizen or class of citizens which is not granted on the same terms to all. It is no answer to this constitutional objection to urge that the sums contributed by city taxpayers for interest and penalties ought to belong to the city. If this is true as to a city, it is also true of every other body politic in the county. If the legislature had seen fit to direct the interest and penalty to be paid over to the respective taxing districts on account of whose taxes it had been collected, such a disposition would, no doubt, have been proper. But that policy has not been adopted, and, so long as the interest and penalties collected from taxes on nonurban property go into the county general fund, like collections from city taxpayers must be disposed of in the same way. The act of 1905 does not repeal section 1260 and extend to the nonurban taxing districts the same privilege it purports to grant to cities. The court clearly has no power to repeal or revise this provision of the general revenue law so

as to give rural communities the same rights as those which section 124 has attempted to give to cities.

There is no doubt that for many purposes cities, or the inhabitants thereof, or the property therein, may be properly placed in a distinct class for the purpose of legislation with respect to such class, without infringing the constitutional prohibitions against "class legislation." But the fact that such a classification would be eminently proper for some purpose is no reason for upholding it in this case. Chief Justice Corliss, speaking for the court on this subject, in Edmonds v. Herbrandson, 2 N. D. 270, 274, 50 N. W. 970, 14 L. R. A. 725, said: "The classification must be natural, not artificial. It must stand upon some reason, having regard to the character of the legislation." See, also, Vermont Loan & Trust Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; Angell v. Cass Co., 11 N. D. 265, 91 N. W. 72; Beleal v. Railroad Co. (decided at this term), 108 N. W. 33. Applying this test, we can conceive of no reason ·which would warrant this manifestly unjust discrimination in favor of city taxpayers as against other taxpayers in the county. We must therefore hold that section 124 of chapter 62, p. 122, Laws 1905, is invalid, to the extent that it requires the county treasurer to pay the interest and penalties on city and city school taxes to the city. Special assessments for local improvements are obviously in a class clearly distinguishable from ordinary taxes, and this distinction is properly recognized by section 1260, Rev. Codes 1899.

The judgment appealed from is reversed. All concur.