ROSEDALE SCHOOL DISTRICT NO. 5, a Municipal Corporation, Appellant, v. TOWNER COUNTY, a Public Corporation, Respondent.

(216 N. W. 212.)

**Statutes — payment of taxes and penalties — constitutional.**

1. Section 2190, Compiled Laws of 1913, chap. 298, Laws 1911, which provides that all penalties and interest collected on taxes and parts of taxes due to organized townships, villages, towns, cities, or school districts shall be paid to the township, village, town, city or school district for which the tax was levied, does not contravene either §§ 11 or 20 of the state Constitution.

**Limitation of actions — school districts amenable.**

2. Counties and school districts are amenable to the statutes of limitation of this state.

**Taxes — collection by county treasurer — monthly settlement with local treasurer.**

3. Under the laws of North Dakota the county treasurer is collector of all taxes whether levied for state, county, city, township, village, school or other governmental purposes. Comp. Laws 1913, § 2156. On the first day of

Annotation.—(2) On applicability of statute of limitations to actions by agencies of state, see annotation in 3 L.R.A.(N.S.) 746; 22 L.R.A.(N.S.) 921; L.R.A. 1916E, 96; 17 R. C. L. 973; 2 R. C. L. Supp. 750. .

each month he is required to make a full settlement of all moneys collected during the preceding month and credit the collections to the proper funds of the state, county, township, city, village and school district for whom they were collected. Comp. Laws 1913, §§ 2180, 2181.

**Taxation — penalties and interest payable to local municipality — statute of limitations applies.**

4. In the instant case the county treasurer of the defendant county, in making settlements for taxes, penalties and interest, in the years 1910 to 1920, inclusive, caused all penalties and interest collected on the school taxes of the plaintiff district to be credited to the defendant county. In so doing, the county treasurer acted in good faith and the county retained the moneys so placed in its treasury in the good faith and belief that the moneys belonged to it. It is *held:*

(1) That an obligation arose on the part of the county to return the penalties and interest so received by the county from the county treasurer.

(2) That the county was not a voluntary trustee of the moneys so received and that the statute of limitations commenced to run against the school district for each amount so received by the county from the county treasurer from the date of each settlement.

Opinion filed November 4, 1927.

Constitutional Law, 12 C. J. § 855 p. 1130 n. 25. Limitations of Actions, 37 C. J. § 28 p. 711 n. 4; § 32 p. 715 n. 50; p. 716 n. 59; p. 718 n. 64; § 224 p. 859 n. 29; § 270 p. 909 n. 58; § 278 p. 917 n. 38, 39. Statutes, 36 Cyc. p. 992 n. 91; p. 1010 n. 51. Taxation, 37 Cyc. p. 1192 n. 37; p. 1594 n. 76. Trusts, 39 Cyc. p. 28 n. 1.

From a judgment of the District Court of Towner County, *Buttz, J.,* plaintiff appeals.

Reversed and remanded.

*Dudley L. Nash, F. J. Funke,* and *George I. Rodsater,* for appellant.

"The tax levied by a school district or other political subdivision is a trust fund in the hands of the county treasurer and must be paid over to the district under § 3682, Comp. Laws 1913." Viking Twp. v. Mikkelson, 24 N. D. 175, 139 N. W. 525.

The penalty and interest collected on a municipal district tax is a part of and follows the tax. Howe v. Bradley, 19 Me. 36.

*Kehoe & Verret* and *Charles Houska* for respondent.

"Under the laws of this state, the collection of all taxes, including special assessments for local improvements in cities, is committed to the

officers of the county in which the property taxed is situated. . . . The interest and penalty are imposed not by the several taxing districts, but by the laws of the state. They are not taxes in the strict sense, but are imposed for the purpose of inducing prompt payment of the taxes proper." State ex rel. Mitchell v. Mayo, 15 N. D. 327, 108 N. W. 36.

The penalty and interest are not properly a part of the taxes. Neither the county or school district can levy them. They are not created by the levy. The legislature alone in the exercise of its sovereign power may impose them. Estus v. State (Okla.) 200 Pac. 1002; Whatcom v. Roeder (Wash.) 61 Pac. 767.

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County (U. S.) 30 L. ed. 178; Whetstone v. Slonaker (Neb.) 193 N. W. 749.

"In the case of the trustee of an involuntary or constructive trust, the statute of limitations commences to run as soon as that trust relation is created by devolution of the title of the trust property on him. No disaffirmance of the trust on his part is necessary to set the statute in motion." Earle v. Bryant (Cal.) 107 Pac. 1018.

"Where a trust is imposed by law, and the trustee is guilty of no fraud, the statute of limitations begins to run as against the beneficiary at the time the trust is created, and not at the time of demand or a breach of the trust." Parks v. Satterthwaite (Ind.) 32 N. E. 82.

CHRISTIANSON, J. This action was commenced April 3, 1922. It was brought by the plaintiff school district to recover from the defendant, Towner county, all penalties and interest collected on taxes assessed in such school district for school purposes since July 1, 1911 up to the time of the commencement of the action. The action is based upon § 2190 of the Compiled Laws of 1913, which reads as follows:

"All penalty and interest collected on taxes shall belong to the county and become a part of the general fund, or such other fund as the county commissioners may direct; except the penalty and interest collected on taxes and parts of taxes and special assessments due to organized townships and incorporated villages, towns and cities and school districts therein and special assessments made for drains and other im-

provements. Such penalties and interest shall be paid to the township, village, town, city or school district therein, or drainage or other improvement fund for which was levied the tax or special assessment upon which the penalty and interest is collected."

It is undisputed that the defendant county has collected penalties and interest on taxes of the plaintiff school district for the years 1910 to 1920, inclusive, and there is no dispute as to the amounts so collected. In its answer the defendant admits that it collected such penalties and interest and has retained the same, but it asserts that it is not liable to the plaintiff school district for the amounts so collected on the grounds: (1) that said § 2190, supra, is unconstitutional; and (2) that, as regards all interest and penalties collected prior to April 3, 1916, any cause of action in favor of the plaintiff is barred by the statute of limitation. The trial court sustained both of these defenses and ordered judgment in favor of the defendant for a dismissal of the action. The plaintiff school district has appealed from the judgment and presents for determination on appeal the questions raised by the two defenses.

1. Defendant invokes sections 11 and 20 of the North Dakota Constitution, which provide (1) that all laws of a general nature shall have uniform operation; and (2) that no citizen or class of citizens shall be granted privileges or immunities which upon the same terms shall not be granted to all citizens, and contends that a statute quite similar to § 2190, supra, was held violative of these constitutional provisions in State ex rel. Mitchell v. Mayo, 15 N. D. 327, 108 N. W. 36. In our opinion there is a striking difference between § 2190, supra, and the statute involved and held to be unconstitutional in State ex rel. Mitchell v. Mayo, supra. In that case the court had under consideration a provision of a statute relating to the organization and government of cities. The statute involved there provided that the county treasurer should pay to the city treasurer all city and school taxes "with interest and penalties collected thereon." Other existing statutes provided that all interest and penalties collected upon taxes in villages, organized townships, or school districts should be retained by the county. So, the situation created by the particular provision under consideration in State ex rel. Mitchell v. Mayo, supra, was that taxpayers in cities were placed in a more favored position than taxpayers in villages, organized

townships and rural districts.   The effect of enforcement of the law invoked and sought to be enforced in that case was graphically epitomized by this court in its opinion:

"The city taxpayer will share pro rata in the benefits of reduced taxation for the county general fund resulting from the contributions to that fund by the taxpayers of the villages, townships, and rural school district throughout the county; but the latter are to be excluded from any share in like collections from the city taxpayers.   The city taxpayers are to be given the exclusive enjoyment of the interest and penalties collected at the expense of the county from city taxpayers, but the county taxpayers must share the interest and penalties on taxes in the rural district with the city taxpayers.   This is manifestly an unjust and unreasonable discrimination in favor of city property owners and against those who own property outside the city limits. The act clearly contravenes § 11 of the Constitution, which declares that all laws af a general nature shall have a uniform operation, and is likewise an infringement of that part of § 20 which forbids the granting of any privilege or immunity to one citizen or class of citizens which is not granted on the same terms to all.   It is no answer to this constitutional objection to urge that the sums contributed by city taxpayers for interest and penalties ought to belong to the city. If this is true as to a city, it is also true of every other body politic in the county.   If the legislature had seen fit to direct the interest and penalty to be paid over to the respective taxing districts on account of whose taxes it had been collected, such a disposition would, no doubt, have been proper."   (15 N. D. 331.)

This statement demonstrates quite clearly the difference between the statute under consideration in the Mayo Case and the one involved here. It is quite apparent that no such results will follow from an enforcement of § 2190 as those which this court indicated would have resulted from an enforcement of the statute under consideration there.   Section 2190, supra, does not discriminate in favor of cities or against civil townships, villages or school districts.   It confers no benefits upon the taxpayers of a city which are not also conferred upon taxpayers of villages, civil townships and school districts.   Respondent however, points out that some congressional townships in Towner County have not been organized into civil townships, and that the county commissioners

have apportioned such unorganized territory into road districts, as prescribed by § 1959, Comp. Laws 1913; and it is argued by the respondent that, under § 2190, interest and penalties collected on taxes levied in such road districts must go into the general fund of the county or such other fund as the county commissioners may direct, and that as a consequence a similar discrimination will result as against taxpayers of such road districts as those which existed against taxpayers of villages, civil townships and school districts under the statute involved in the Mayo Case.

While there is some force in respondent's argument, we are constrained to the view that the alleged discrimination against taxpayers residing in unorganized territory does not render the law violative of either § 11 or § 20 of the state Constitution. The object of both of these provisions is to inhibit the legislature from conferring special benefits, or placing special burdens, upon certain classes, or upon certain localities, which are not placed upon other classes or localities similarly situated. These constitutional provisions, however, were not intended to inhibit the legislature from classifying persons and things or political subdivisions for the purposes of legislation. On the contrary they recognize the existence of such legislative power, and are an inhibition against arbitrary or unreasonable use of such power. Vermont Loan & T. Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; Edmonds v. Herbrandson, 2 N. D. 270, 14 L.R.A. 725, 50 N. W. 970; State ex rel. Hagen v. Anderson, 22 N. D. 65, 132 N. W. 433; Investors' Syndicate v. Pugh, 25 N. D. 490, 142 N. W. 919; State ex rel. Linde v. Taylor, 33 N. D. 76, 104–108, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583; State ex rel. Atkins v. Lawler, 53 N. D. 278, 205 N. W. 880.

In Vermont Loan & T. Co. v. Whithed, supra, it was contended that a statute defining usury and prescribing penalties for its violation was violative of §§ 11 and 20 of the state constitution, because building and loan associations incorporated in this state were exempted from the operation of the law. This court held that the legislature, in exempting the building and loan associations from the provisions of the usury act, had not contravened §§ 11 and 20 of the state constitution. In the decision in that case this court, in the following pertinent language, declared the existence of the legislative power of classification, as well

as the limitations placed upon that power, by §§ 11 and 20 of the constitution. The court said:

"The uniform operation required by this provision does not mean universal operation. A general law may be constitutional, and yet operate in fact only upon a very limited number of persons or things, or within a limited territory. But, so far as it is operative, its burdens and benefits must bear alike upon all persons and things upon which it does operate, and the statute must contain no provision that would exclude or impede this uniform operation upon all citizens, or all subjects and places, within the state, provided they were brought within the relations and circumstances specified in the act. [Citation of authorities].

"From the foregoing proposition it follows of necessity that the legislature has power to classify persons and subjects for the purpose of legislation, and to enact laws applying specially to such classes, and, while the laws thus enacted operate uniformly upon all members of the class, they are not vulnerable to the constitutional inhibition under consideration. But this power of the legislature is circumscribed. It is not an arbitrary power waiting the whim of the legislature. Its exercise must always be within the limits of reason, and of a necessity more or less pronounced. Classification must be based upon such differences in situation, constitution or purposes, between the persons or things included in the class and those excluded therefrom, as fairly and naturally suggest the propriety of and necessity for different or exclusive legislation in the line of the statute in which the classification appears."

There is no general rule which may be applied to legislative enactments and the validity of classification determined. The question is one which must be determined in the light of the subject of the legislation, and the effect of the operation of the classification in the particular case where the validity of the statute is drawn in question. "In determining whether or not a basis of classification is reasonable, it must be looked at from the standpoint of the legislature enacting it, the question being primarily for the legislature. A statute will be sustained where the basis for classification made by it could have seemed reasonable to the legislature, even though such basis seems to the courts to be unreasonable. Legislative discretion in this matter is not subject to review by the courts, except to the extent of determining whether the clas-

sification adopted is arbitrary, unreasonable, and unjust. As in all the other cases involving the validity of statutes, all reasonable doubts are to be resolved in favor of upholding the validity of legislation establishing a classification; and the legislative judgment as to classification can be overthrown by the courts only when it is clearly erroneous." 12 C. J. pp. 1129, 1130.

The difference between the classification involved in State ex rel. Mitchell v. Mayo, supra, and that involved in this case, is quite striking. Under the statute involved in State ex rel. Mitchell v. Mayo, all penalties and interest collected on village, township, and rural school district taxes were retained by the county treasurer, placed in the county treasury and expended for general county purposes. In other words, under the statute there involved, city taxpayers received the direct benefit, within the city, of all penalties and interest collected on city taxes, and they also shared pro rata in the benefits of reduced taxation for county purposes resulting from the contribution to the county funds by the taxpayers of villages, townships and rural school districts. As pointed out in the decision in that case, the statute there involved made an arbitrary discrimination between taxpayers in the various taxing districts of the county. We are entirely agreed with the rule announced and the conclusions reached in the Mayo Case. It seems clear that no good reason existed for the distinction made in the statute involved in that case, especially as between cities and villages and organized townships. Each village and organized township, as well as each city, has a governing board authorized to levy taxes. Each has a local board of equalization and a local treasurer with whom the county treasurer is required to keep an account and to whom he is required to pay over all moneys collected by him in payment of taxes for village of township purposes, as the case may be. But, a road district, formed by the county commissioners out of unorganized territory, is not a taxing district or a body politic. It has no separate or independent existence. It is a part of the county,—an administrative district, established as a matter of convenience, incident to the operation of the county government.

The statute providing for the establishment of such districts (Comp. Laws 1913, § 1959) reads:

"At the annual meeting of the board of county commissioners in

January of each year, or as soon thereafter as practicable, it shall be the duty of such board in each organized county to apportion the county into one or more road districts when such county is not formed into townships, and shall appoint for each district a road supervisor, who shall hold his office until the first day of January succeeding his appointment, and shall take an oath faithfully to discharge his duties as such road supervisor:"

It will be noted that this section contemplates that road districts formed thereunder are to be temporary in character. They exist for only one year, and the road supervisor in each of such districts holds office only until the first day of January succeeding his appointment. Taxes, both real and personal, become "due on the first day of December in each and every year for which the tax was levied, and become delinquent on the first day of March next after they become due." Section 2166, Supplement to the 1913 Compiled Laws of North Dakota; § 2185, Comp. Laws 1913. Hence, a tract of land may be in one road district at the time the tax thereon becomes due, and in another when such tax becomes delinquent. And a taxpayer, without any change of residence, may be a resident of one road district at the time his personal property tax becomes due, and a resident of another when such tax becomes delinquent. The differences thus existing between taxing districts, i. e., cities, villages, organized townships and school districts, and road districts, formed under § 1959, Comp. Laws 1913, in our opinion, is such that it cannot be said that the legislature acted arbitrarily or unreasonably in making the distinction which it did make between them as regards the disposition of penalties and interest.

2. The next question presented for determination is whether plaintiff's claim, or any part thereof, is barred by the statute of limitations. It is contended on behalf of the plaintiff that the county holds the moneys collected for interest and penalties upon the school taxes of the plaintiff school district, which the county treasurer through mistake turned into the county treasury, in trust for the plaintiff; and that the statute of limitations is not available as a defense in an action by the plaintiff to recover these funds. The defendant, on the other hand, contends that the relations between the parties arise by virtue of law; that, if a

trust existed, it was an involuntary and not a voluntary trust and that the statute of limitations is available as a defense.

We are wholly agreed that the statute of limitations is available in behalf of the county as a defense in this action. The plaintiff school district and the defendant county are public corporations which may sue and be sued (Comp. Laws 1913, §§ 1140 and 3250) conformably to the ordinary rules that govern the law of procedure ·between private persons. Metropolitan R. Co. v. District of Columbia, 132 U. S. 1, 10, 33 L. ed. 231, 235, 10 Sup. Ct. Rep. 19. In this state the rights of remedy are governed by the Code of Civil Procedure. (Comp. Laws 1913, § 7321.) It is therein provided:

"Sec. 7358. Civil actions can only be commenced within the periods prescribed in this code after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute. But the objection that the action was not commenced within the time limited can only be taken by answer.

"Sec. 7373. The following actions must be commenced within the periods set forth in the following five sections after the cause of action has accrued.

"Sec. 7375. Within six years:

"1. An action upon a contract, obligation or liability, express or implied, excepting those mentioned in section 6762. (Section 6762 relates to the period of limitation as regards the lien of a chattel mortgage).

"2. An action upon a liability created by statute, other than a penalty or forfeiture, when not otherwise expressly provided. . . .

"Sec. 7382. The limitations prescribed in this chapter shall apply to actions brought in the name of the state, or for its benefit, in the same manner as to actions by private parties."

Section 7359, Comp. Laws 1913, requires all actions by the state of North Dakota "for or in respect to any real property or the issues or profits thereof by reason of the right or title of the state to the same" to be brought within forty years.

The general principles as to immunity of the sovereign from limitations which arose in England have been applied to the several states of the American union, as regards their statutes of limitation, and it has become a settled rule of American jurisprudence that periods of limitation do not run against a state unless the statute expressly or by the

clearest implication includes the state.   17 R. C. L. pp. 970, 971; 25 Cyc. 1006–1008; 37 C. J. 710; 1 Wood, Limitations, 4th ed. §§ 52, 52a. In certain cases this doctrine has been invoked in behalf of and held applicable to subordinate political bodies, including municipal corporations.   But the rule established and supported by the overwhelming weight of authority is that municipal or public corporations are subject to the statutes of limitation the same as other corporations or natural persons; that such statutes run not only for but against them, although they are not expressly named in the statutes as coming within their provisions.   25 Cyc. 1008, 1009; 37 C. J. 715; 1 Wood, Limitations, 4th ed. § 53; 18 Standard, Proc. p. 1025; 17 R. C. L. pp. 972, 973; Bannock County v. Bell, 8 Idaho, 1, 101 Am. St. Rep. 140, 65 Pac. 710; Metropolitan R. Co. v. District of Columbia, 132 U. S. 1, 33 L. ed. 231, 10 Sup. Ct. Rep. 19; Metropolitan R. Co. v. District of Columbia, supra, was an action by the District of Columbia to recover from a street railway company sums expended by the District in paving certain streets and avenues in the city of Washington, "upon and in consequence of the neglect of the defendant to do said work and furnish said materials in accordance with its duty as prescribed by its charter."   The railway company pleaded the statute of limitations.   It was contended, in behalf of the District of Columbia, that it was "not amenable to the statute of limitations, for three reasons: first, because of its dignity as partaking of the sovereign power of the government; secondly, because it is not embraced in the terms of the statute of limitations in force in the District; and, thirdly, because if the general words of the statute are sufficiently broad to include the District, still, municipal corporations, unless specially mentioned, are not subject to the statute."   132 U. S. 3.

After a careful review of the acts of Congress relating to the government of the District of Columbia, and the decisions of the United States Supreme Court pertaining to the political status of the District, the court concluded:   "We are clearly of the opinion that the plaintiff (the District of Columbia) is a municipal corporation, having a right to sue and be sued, and subject to the ordinary rules that govern the law of procedure between private persons."   132 U. S. 9.

In disposing of the contention that the statute of limitations did not apply to municipal corporations, because the statute did not designate

them as coming within its terms, the court (after quoting from the statute) said, in part:

"There is nothing in any part of the Act to restrain the generality of this language: 'All (enumerated) actions sued or brought by any person or persons within this province, . . . shall be commenced within three years.' Corporations are 'persons' in the law. There is no apparent reason why they should not be included in the statute. It is conceded that private corporations are included. On what ground, then, can municipal corporations be excluded? Not on the ground that they are not 'persons,' for that would exclude private corporations. They are, therefore, within the terms of the law.

"Are they not also within the spirit and reason of the law? They are certainly within the reason of the preamble. It is just as much for the public interest and tranquillity that municipal corporations should be limited in the time of bringing suits as that individuals or private corporations should be. The reason stated in the preamble for the passage of the law applies to all; and, moreover, it shows that the objects of the law are beneficent ones, and, therefore, that it should be liberally construed. It cannot apply to the sovereign power, of course. No restrictive laws apply to the sovereign, unless so expressed. And especially no laws affecting a right on the ground of neglect or laches because neglect and laches cannot be imputed to him. And it matters not whether the sovereign be an individual monarch, or a republic or state. The principle applies to all sovereigns. The reason usually assigned for this prerogative is, that the sovereign is not answerable for the delinquencies of his agents. But whatever the true reason may be, such is the general law—such the universal law, except where it is expressly waived. The privilege, however, is a prerogative one, and cannot be challenged by any person inferior to the sovereign, whether that person be natural or corporate.

"It is scarcely necessary to discuss further the question of the applicability of the Statute of Limitations to a purely municipal corporation when it is embraced within the general terms of the law. It was expressly decided to be applicable in the cases of Kennebunkport v. Smith, 22 Me. 445; Cincinnati v. First Presby. Church, 8 Ohio, 298, 32 Am. Dec. 718; Cincinnati v. Evans, 5 Ohio St. 594; St. Charles County v. Powell, 22 Mo. 525, 66 Am. Dec. 637; Armstrong v. Dalton,

15 N. C. (4 Dev. L.) 569, and other cases cited in the notes to Wood, Limitations, § 53, and to 2 Dill. Mun. Corp. § 668. Judge Dillon, in the section last cited, accurately says: The doctrine is well understood, that to the sovereign power the maxim, *'nullum tempus occurrit regi,'* applies, and that the United States and the several states are not, without express words, bound by the Statutes of Limitation. Although municipal corporations are considered as public agencies, exercising, in behalf of the State, public duties, there are many cases which hold that such corporations are not exempt from the operation of limitation statutes, but that such statutes, at least as respects all real and personal actions, run in favor of and against these corporations in the same manner and to the same extent as against natural persons. In Evans v. Erie County, 66 Pa. 222, 228, Sharswood, J., says: 'That the Statute of Limitations runs against a county or other municipal corporation, we think cannot be doubted. The prerogative is that of the sovereign alone; *nullum tempus occurrit reipublicae.* Her grantees, though artificial bodies created by her, are in the same category with natural persons.' (See also Dundee Harbour v. Dougall, 1 Macq. H. L. Cas. 317). But we forbear to quote further authorities on the subject. We hold the doctrine to be well settled."

The reasoning of the United States Supreme Court in Metropolitan R. Co. v. District of Columbia, supra, has even greater force in the case at bar. For, in this state the legislature has expressly provided that the state itself shall be subject to the statute of limitations. We are entirely satisfied that school districts and counties are within the terms of the statute of limitations and that the statute runs not only for but against them.

The next question for consideration is whether the transaction is one to which the statute is applicable. We think it is.

Trusts are classified by the laws of this state as either voluntary or involuntary. Comp. Laws 1913, § 6271. A voluntary trust is an obligation arising out of personal confidence reposed in and voluntarily accepted by one for the benefit of the other. Comp. Laws 1913, § 6272. An involuntary trust is one created by operation of law. Comp. Laws 1913, § 6273. Voluntary trusts are known in legal terminology as express trusts, and involuntary trusts are known as implied trusts. 39 Cyc. 28.

As regards the duties of the county treasurer in accounting for moneys received by him for the county in the collection of school taxes and payment thereof to the treasurers of the respective school districts, our statutes provide:

"Sec. 2156.  The county treasurer shall be the receiver and collector of all taxes extended upon the tax lists of the county, whether levied for state, county, city, town, school, poor, bridge, road or other purposes, . . . and he shall . . . place the same when collected to the credit of the proper funds. . . .

"Sec. 2180.  On the first day of each month of each year the county treasurer shall make a full settlement with the county auditor of his receipts and disbursements since the last settlement, and turn over to the auditor county warrants and other vouchers paid by him and all auditor's warrants paid, taking the receipt of the auditor for such vouchers, and the auditor and treasurer shall distribute and credit to the proper fund all sums received since the last settlement.

"Sec. 2181.  The county auditor and county treasurer shall keep accounts with the state and county, and with each township, city, incorporated village and school district in the county; and immediately after the settlement as provided in the preceding section they shall credit the collections to the proper funds; and upon application of any town, city, village or school district treasurer, the auditor shall give him an order on the county treasurer for the amount due such township, city, village or school district, and shall charge them respectively with the amount of such order; and at the same time shall notify the clerk of each township, city, village or school district of the issuance of such order; provided, that the county auditor shall not issue his order as in this section provided until the bond of the person applying for such order shall have been filed as required by law.

"Sec. 1219.  The treasurer of each (school) district shall apply to the county auditor for an order, and the county treasurer shall pay over to him on such order all of the school money collected for such district and all school money apportioned to such district by the county superintendent and the county auditor shall issue such order; provided, such district treasurer has qualified and filed his oath and bond as provided by law.  It shall be the duty of the county treasurer, when payment is made to any school treasurer or any funds herein provided for, im-

mediately to notify the clerk of the school board of the payment of the same.

"Sec. 1220. Each county treasurer shall keep a regular account with each school corporation, in which he shall charge himself with all taxes collected by levy of the district board and all sums apportioned to the district by the county superintendent or other authority and all sums received from the district, and he shall credit himself with all payments made to the treasurer of the district, distinguishing between the items paid by apportionment, those from county taxes and those from other sources. He shall also credit himself with all payments for redemption or endorsement of warrants in the collection of taxes and shall deliver to the district treasurer a duplicate tax receipt for the amount of each warrant so indorsed or redeemed, together with all warrants so redeemed at the time of making other regular payments to the district treasurer. To these credits, to balance the accounts, he shall add all items for legal fees, for collection and other duties. He shall annually on the first day of July file with the county superintendent of schools an itemized statement of all funds remitted by him during the preceding school year to each of the respective school district treasurers. On the same day he shall also send statements to each of such treasurers itemizing the payments made by him during such time to such respective treasurers. Also, he shall, on the same day, send to each district clerk a copy of the statement, which he sends to the treasurer of that district.

"Sec. 1221. It shall be the duty of the county treasurer to collect the taxes for school purposes at the same time and in the same manner that the county and state taxes are collected, and full power is hereby given him to sell property for school taxes the same as is provided by law for the collection of other taxes; whenever an error occurs in the tax list of any school district, the school board or board of education in special or independent districts or districts organized under special laws may correct such errors and refund such taxes improperly collected. All penalties and interest collected on delinquent school taxes shall be applied to the proper fund to which such delinquent taxes belong."

It will be noted that the county treasurer was and is the tax collector for both the school district and the county. It was his duty to collect

all taxes due from the taxpayers of the county and to distribute the moneys received from the various taxpayers, respectively, to the state, county and the subordinate political subdivisions of the county. On the first day of each month of each year he was required to make a full settlement with the county auditor and to distribute and credit to the proper funds all moneys which he had collected since the last settlement. It is presumed that this duty was regularly performed. There is no contention in this action that the county treasurer or the defendant county acted fraudulently or collusively or that the county received the money as the result of any fraud or collusion. The basis of the action is that the county treasurer, in the good faith performance of his official duty, made a mistake in the distribution of moneys he had collected for interest and penalty upon school taxes. It is admitted that the county treasurer made such mistake. At the time of each settlement, that is, on the first day of each month, the county treasurer, in distributing such funds, credited to the county, i. e., placed into the treasury of the county, all moneys collected for penalty and interest upon taxes of the plaintiff school district. The defendant county received the money as its money and not as money to be kept for the plaintiff. All of this was done openly and publicly. There was no fraudulent concealment. The county having received moneys belonging to the plaintiff school district, in these circumstances, the law implied an obligation or promise on the part of the county to repay it. This obligation arose when the county treasurer credited the moneys to the county. 15 Am. & Eng. Enc. Law, pp. 1096–1098; 37 C. J. 859; School Directors v. School Directors, 105 Ill. 653; Strough v. Jefferson County, 119 N. Y. 212, 23 N. E. 552; Leather Mfrs. Nat. Bank v. Merchants Nat. Bank, 128 U. S. 26, 32 L. ed. 342, 9 Sup. Ct. Rep. 3; Centerville v. Turner County, 23 S. D. 424, 122 N. W. 350; id. 25 S. D. 300, 126 N. W. 605; Jones v. School Dist. 26 Kan. 490. While there arose, by operation of law, an obligation on the part of the county to pay over to the school district the money belonging to the school district, and which the county treasurer through mistake had paid to the county, no such trust relation was created as prevents the operation of the statute of limitations. The equitable rule that the statute of limitations does not run in favor of the trustee against the cestui que trust applies only to express or voluntary trusts, and does

not apply to implied or involuntary trusts. 37 C. J. 909, 917; 25 Cyc. 1155; 3 Williston, Contr. § 2034; 17 R. C. L. pp. 958, 959; Dearborn County v. Lods, 9 Ind. App. 369, 36 N. E. 772; Strough v. Jefferson County, 119 N. Y. 212, 23 N. E. 552; Centerville v. Turner County, 23 S. D. 424, 122 N. W. 350; School Directors v. School Directors, 105 Ill. 653; Price v. Mulford, 107 N. Y. 303, 14 N. E. 298; Ames v. Howe, 13 Idaho, 756, 93 Pac. 35. See also Chicago v. Cook County, 136 Ill. App. 120.

In School Directors v. School Directors, 105 Ill. 653, the town treasurer, by mistake, placed to the credit of school district No. 1 taxes levied and collected upon two sections of land situated within school district No. 5. The latter district brought an action in equity for the recovery of the moneys which the town treasurer by mistake had paid to school district No. 1. School District No. 5 contended that the statute of limitations was not available on the ground that the moneys sought to be recovered were public trust funds. In disposing of this contention, the Supreme Court of Illinois said (page 655):

"We are of the opinion that the statute of limitations of five years, relied upon by appellee in its answer is a bar to any recovery in this suit. The bill shows upon its face that more than five years had elapsed between the last payment of any of this money and the filing of the bill. There is nothing proved or alleged that would tend to justify this delay.

"Appellant sets up the claim that the moneys sought to be recovered are public trust funds, and that for that reason the statute of limitations does not run against the suit. The trustee in this case was the township treasurer, and as long as he held the money it was a trust fund in his hands, but when he paid it out to appellee, or on its orders, it was not a trust fund in appellee's hands which would exclude the operation of the statute of limitations. There was no proper trust relationship between appellant and appellee, arising from the mere receipt by the latter of trust funds belonging to the former, without anything of fraud or collusion on the part of the appellee, or notice of the money belonging to appellant. It would be but the ordinary case of money had and received for the use of another; and in any such case of a personal claim, equity requires relief to be sought within the period prescribed for personal suits of like nature at law. 1 Story, Eq.

Jur. §§ 64a, 529; Hancock v. Harper, 86 Ill. 445. The analogous suit at law would be an action of assumpsit for money had and received, the limitation for which is five years, and we think the same limitation should be applied to this suit in equity for the recovery of the money.

"In an action on contract or for a tort, a municipal corporation may plead or have pleaded against it the Statute of Limitations. 2 Dill. Mun. Corp. § 675; Logan County v. Lincoln, 81 Ill. 156; Piatt County v. Goodell, 97 Ill. 84."

In Strough v. Jefferson County, 119 N. Y. 212, 23 N. E. 552, a county treasurer used certain moneys belonging to a town in payment of county obligations. The town brought action and the county pleaded the statute of limitations as a bar. In the decision in that case the New York Court of Appeals said (page 554):

"The misappropriation of the taxes in question being conceded, there can, we think, be no doubt that an action would lie against the county, in behalf of the town of Orleans, to recover back the money misappropriated, on the principle upon which the equitable action for money had and received is founded. . . . The county applied it (the money) in contravention of the act, towards the discharge of county obligations. It ought in justice to restore it, and make good to the town what it has lost by its unauthorized acts. . . .

"The final question arises upon the appeal of the town to the part of the judgment limiting the recovery to the taxes collected and appropriated within six years prior to the submission. Section 382 of the Code of Civil Procedure prescribes a limitation of six years after the cause of action has accrued to certain actions, and, among others, to 'an action upon a contract, obligation, or liability, express or implied, except a judgment or sealed instrument.' It is stated in the submission in this case that the several sums collected and paid to the treasurer of Jefferson county, on account of railroad taxes in the town of Orleans, were 'paid out and expended in payment of the debts and liabilities of the county of Jefferson on the 1st day of June of each year, after the year for which the tax was collected.' A cause of action, therefore, for money had and received, arose on the 1st day of June of each year from 1873, against the county in favor of the town, for the sum so misappropriated on that day, and this cause of action would be barred in six years from that date. The plaintiff insists that the

action is for a breach of trust and the misuse of trust funds, and that the statute does not commence to run against such a cause of action until there is a denial of the right of the beneficiary. The duty imposed on the treasurer was in a general sense a trust duty. This is true of every duty imposed on a public officer, but persons injured by a violation of the duty, for which they may maintain an action at law, must pursue their remedy within the period of limitation of legal actions. See Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606; Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643; Re Neilley, 95 N. Y. 386. The legal remedy here was adequate, and the cause of action was definite and distinct, as to each misappropriation, at its date; and we see no escape from the conclusion that the limitation is governed by § 382, and consequently that no recovery can be had back of six years."

In the American & English Encyclopedia of Law, it is said:

"The limitation fixed by the statute for implied contracts applies to all contractual obligations which are not express, but which arise by implication of law from the acts or agreements, written or unwritten, of the parties, although the obligation may, in a measure, arise out of and depend upon special statutory provisions with reference to the obligation.

.    .    .    .    .    .    .    .    .

"An action to recover money had and received is one based on an implied contract, and in the absence of a specific provision otherwise is governed by the limitations applicable to actions on such contracts." 19 Am. & Eng. Enc. Law, 2d ed. pp. 274, 275. See also Metropolitan R. Co. v. District of Columbia, 132 U. S. 1, 12, 13, 33 L. ed. 231, 235, 236, 10 Sup. Ct. Rep. 19.

In our opinion the statute of limitations commenced to run in favor of the county and against the plaintiff school district at the time the county treasurer made each of the several settlements and caused the moneys belonging to the school district to be placed to the credit of the county.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

BIRDZELL, Ch. J., and NUESSLE, BURKE, and BURR, JJ., concur.