Filed 11/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 215

John N. Finstad and Lori L. Finstad, Plaintiffs and Appellants

v.

Ransom-Sargent Water Users, Inc.,

and/or Ransom-Sargent Water Users

District, and/or Southeast Water Users

District, and/or Southeast Water Users,

and Jay Anderson, Scott Johnson,

Don Lloyd, Don Smith, Larry Schultz

and Patsy Storhoff, Defendants and Appellees

No. 20110142

Appeal from the District Court of Ransom County, Southeast Judicial District, the Honorable John T. Paulson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Bruce A Schoenwald, P.O. Box 1287, Moorhead, MN 56561-1287, for plaintiffs and appellants.

Michael T. Andrews, P.O. Box 10247, Fargo, ND 58106-0247, for defendants and appellees.

Finstad v. Ransom-Sargent Water Users, Inc.

No. 20110142

VandeWalle, Chief Justice.

[¶1] John and Lori Finstad appealed from a district court judgment which granted summary judgment in favor of Ransom-Sargent Water Users, Inc., n/k/a Southeast Water Users District, and its board members (collectively, “Water District”), and dismissed their complaint.  We conclude the district court erred in applying the three-

year statute of limitations of N.D.C.C. § 32-12.1-10 to the Finstads’ contract claims, and genuine issues of material fact existed to preclude summary judgment.  We reverse and remand for further proceedings.

I.

[¶2] The Finstads owned 80 acres of land in Ransom County, and leased the adjacent 240 acres from Willis and Doris Olson.  In 1997, the Finstads and Olsons granted options to purchase their land to the Water District.  The options contained a provision which allowed the Finstads and Olsons to lease back the property for a five-year period, after which they had a nonassignable right of first refusal for the next five years.  The options also stated that the land could only be used for pasture and hayland purposes if it were leased back, and no feedlots, fertilizer use, or chemical use would be permitted on the land.  The options provided that any violation of the use restrictions would result in the immediate termination of the lease and the right of first refusal.

[¶3] In 2000, the Water District became a political subdivision.  In 2001, the Water District exercised its options to purchase the 320 acres.  The district court found that the Finstads exercised the right to lease their former property back from the Water District, and also exercised the right to lease back the Olsons’ former property, which the Olsons had assigned to the Finstads. 

[¶4] On July 18, 2001, the Water District sent the Finstads a letter informing them that the Water District had voted to terminate their lease-back rights.  The Water District stated it made this decision because the Finstads had trespassed on the land twice and had violated the land-use restrictions by tilling the land on two occasions.  The Water District believed tilling the land was inconsistent with the land-use restrictions contained in the options.  The Water District also informed the Finstads that the right to lease the land would “be put up for bids[.]”  

[¶5] At the end of July 2001, the Water District and the Finstads entered into a Farm Rental Contract and an Agreement and Release.  The Farm Rental Contract did not grant the Finstads the right to rent or use the land, but granted them the right to receive government payments on the land.  The Agreement and Release terminated and discharged all of the Finstads’ rights to the land.  

[¶6] In 2003, the Water District advertised for bids for the right to lease the land.  The advertisement stated the bid must include written evidence of the ability to perform, in the form of a letter of credit from a financial institution, in the minimum amount of $35,000, and proof of liability insurance for at least $1 million.  The Finstads submitted the highest bid.  With their bid, they submitted a cashier’s check in the amount of $35,000 and a “binder” of insurance.  The Water District accepted the second-highest bid, stating the Finstads’ bid did not comply with the bid specifications because a cashier’s check did not qualify as a letter of credit and a “binder” of insurance did not constitute proof of liability insurance.  

[¶7] In early 2006, the Finstads brought suit against the Water District and its board members.  The district court dismissed the action without prejudice due to lack of jurisdiction because the Finstads had filed for bankruptcy.  The Finstads recommenced this action in 2009, alleging the Water District violated the option by cancelling their lease-back rights, forced them to release their rights to the property through fraud, duress, or coercion, and wrongfully rejected their bid.  The Water District moved for summary judgment, which the district court granted in March 2011.

II.

[¶8] The Finstads argue the district court erred in applying the three-year statute of limitations of N.D.C.C. § 32-12.1-10 to their claims because that section only applies to tort claims against political subdivisions.  The Finstads contend the ten-year statute of limitations of N.D.C.C. § 28-01-15(2) applies to their claims because theirs is an action upon a contract contained in an instrument affecting the title to real property.

[¶9] Statutory interpretation is fully reviewable on appeal as a question of law.  
Nelson v. Johnson
, 2010 ND 23, ¶ 12, 778 N.W.2d 773.  “When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.”  N.D.C.C. § 1-02-05.  If a general statutory provision conflicts with a special statutory provision, the two must be construed, if possible, to give effect to both provisions, but if the conflict is irreconcilable, the special statutory provision must prevail and must be construed as an exception to the general statutory provision, unless the general provision is enacted later and it is the manifest intent of the legislature that the general provision shall prevail.  N.D.C.C. § 1-02-07.  “In construing statutes of limitation, we have often relied on the canon of construction that a specific statutory provision controls a more general provision.”  
Dimond v. State ex rel. State Bd. of Higher Educ.
, 2001 ND 208, ¶ 8, 637 N.W.2d 692.  “If the provisions of any chapter or title conflict with or contravene the provisions of any other chapter or title, the provisions of each chapter or title must prevail as to all matters in question arising thereunder out of the same subject matter.”  N.D.C.C. § 1-02-27.  If a statute is ambiguous, we may consider the following in determining the legislature’s intent:

1. The object sought to be attained.

2. The circumstances under which the statute was enacted.

3. The legislative history.

4. The common law or former statutory provisions, including laws upon the same or similar subjects. 

5. The consequences of a particular construction.

6. The administrative construction of the statute.

7. The preamble.  

N.D.C.C. § 1-02-39.  

[¶10] Section 32-12.1-10, N.D.C.C., provides, “An action brought under this chapter must be commenced within three years after the claim for relief has accrued.”  Chapter 32-12.1 was enacted to “create[] additional powers and optional and alternative methods for the single and specific purpose of enabling political subdivisions to pay and to compromise claims and judgments[.]”  N.D.C.C. § 32-

12.1-01.  Several definitions within N.D.C.C. ch. 32-12.1 sound in tort:

1. “Claim” means any claim permitted by this chapter brought against a political subdivision for an injury caused by a political subdivision or an employee of the political subdivision acting within the scope of the  employee’s employment or office.

. . . .

4. “Injury” means personal injury, death, or property damage.

5. “Personal injury” includes bodily injury, mental injury, sickness, or disease sustained by a person, and injury to a person’s rights or reputation.

. . . .

7. “Property damage” includes injury to or destruction of tangible or intangible property.    

N.D.C.C. §§ 32-12.1-02(1), (4)–(5), & (7).  

[¶11] Chapter 32-12.1’s predecessor was 1975 N.D. Sess. Laws ch. 295, which the legislature passed in response to 
Kitto v. Minot Park Dist.
, 224 N.W.2d 795 (N.D. 1974).  In 
Kitto
, the Court was asked to answer “the question of whether the legal doctrine of governmental immunity from 
tort liability
 to individual citizens should be sustained in North Dakota.”  
Kitto
, 224 N.W.2d at 797 (emphasis added).  The Court concluded “governmental bodies, other than the state government, are subject to suit for damages to individuals injured by the negligent or wrongful acts or omissions of their agents and employees.”  
Id.
  The Court further held that the abolition of governmental immunity would be applied prospectively except for the parties in 
Kitto
, allowing the 44th Legislative Assembly to enact legislation it deemed appropriate in light of the decision.  
Id.
 at 804.

[¶12] The legislature enacted 1975 N.D. Sess. Laws ch. 295 in response to the 
Kitto
 decision.  The legislature used almost identical language to the 
Kitto
 holding in describing claims that would subject a political subdivision to liability:  “Each political subdivision shall be liable for money damages for injuries when such injuries are proximately caused by the 
negligence or wrongful act or omission of any employee
 acting within the scope of his employment or office[.]” 1975 N.D. Sess. Laws ch. 295, § 2 (emphasis added).   The legislature also described its intent in enacting ch. 295:  “This Act is a temporary response to the recent judicial decision which held that the doctrine of governmental immunity from 
tort liability
 as it applies to 
political subdivisions
 should not be sustained in this state.”  1975 N.D. Sess. Laws ch. 295, § 13 (emphasis added).  The current version of this statute contains virtually the same language as 1975 N.D. Sess. Laws ch. 295, § 2.  
See
 N.D.C.C. § 32-12.1-

03(1).  The 
Kitto
 decision and subsequent legislation establish that N.D.C.C. ch. 32-

12.1 was intended to apply only to a political subdivision’s tort liability.  Similarly, N.D.C.C. ch. 32-12.2 applies to tort liability of the state.  
See
 
Messiha v. State
, 1998 ND 149, ¶ 21, 583 N.W.2d 385 (noting, in response to this Court’s abrogation of the state’s sovereign immunity from tort liability, “the Legislature enacted 1995 N.D. Sess. Laws ch. 329, codified at N.D.C.C. ch. 32-12.2, for tort claims against the State.”).

[¶13] The Water District asserts 
Dimond v. State ex rel. State Bd. of Higher Educ.
 is dispositive in its favor.  In that case, Dimond, a tenured professor, brought a breach of contract action against the State of North Dakota, by and through the State Board of Higher Education, after he was dismissed from his position.  
Dimond
, 2001 ND 208, ¶¶ 1-2, 637 N.W.2d 692.  The district court granted summary judgment in favor of the state board, finding that Dimond’s claim was barred by N.D.C.C. § 28-01-

22.1’s three-year statute of limitations.  
Id.
 at ¶ 4.  Section 28-01-22.1, N.D.C.C., provides in part: “an action against the state or its employees and officials acting within the scope of their employment or office must be commenced within three years after the claim for relief has accrued.”  This Court upheld the use of section 28-01-

22.1, stating, “actions against the State are governed by the specific three-year statute of limitations for actions against the State in N.D.C.C. § 28-01-22.1, rather than the general six-year period for an action upon a contract in N.D.C.C. § 28-01-16(1).”  
Dimond
, 2001 ND 208, ¶ 12, 637 N.W.2d 692.

[¶14] 
Dimond
 is distinguishable from the instant case because the cause of action in 
Dimond
 was brought against the State of North Dakota, while here, the action was brought against a political subdivision.  Prior to 
Kitto
, no distinction was made between political subdivisions and the state for purposes of immunity and liability.  In 
Rosedale School Dist. No. 5 v. Towner County
, this Court held that because the state was subject to statutes of limitation, it followed that counties and school districts were amenable to statutes of limitation.  
Rosedale
, 56 N.D. 41, 53, 216 N.W. 212, 216 (1927).  In its opinion, the Court cited to 
Metropolitan R.R. Co. v. District of Columbia
, 132 U.S. 1 (1889).  In 
Metropolitan R.R. Co.
, the United States Supreme Court determined the District of Columbia was a municipal corporation subject to the applicable statute of limitations because municipal corporations are “persons” under the law.  
Metropolitan R.R. Co.
, 132 U.S. at 10.  The Supreme Court noted:

It is just as much for the public interest and tranquillity that municipal corporations should be limited in the time of bringing suits as that individuals or private corporations should be. . . .  It cannot apply to the sovereign power, of course.  No restrictive laws apply to the sovereign, 
unless so expressed.

Id.
 at 11 (emphasis added).  The North Dakota Supreme Court found this reasoning especially applicable in 
Rosedale
 because “in this state the Legislature has expressly provided that the state itself shall be subject to the statute of limitations.  We are entirely satisfied that school districts and counties are within the terms of the statute of limitations, and that the statute runs not only for but against them.”  
Rosedale
, 56 N.D. at 53, 216 N.W. at 216.

[¶15] In 
Kitto
, the Court made the distinction between sovereign immunity of the state and governmental immunity of political subdivisions by stating, “It is consistent with our constitutional framework to recognize that there are characteristics of sovereignty which attach to the operations of state government but not to various other independent or semi-independent governmental bodies.”  
Kitto
, 224 N.W.2d at 801.  The Court also noted such a distinction has received broad recognition in other courts.  
Id.
 at 800.  The distinction between the state and political subdivisions for purposes of liability was well-established when 
Dimond
 was decided.  No provision comparable to N.D.C.C. § 28-01-22.1 exists regarding political subdivisions.  Because the Finstads’ claims are against a political subdivision, not the state, 
Dimond
 is inapplicable.

[¶16] We hold N.D.C.C. ch. 32-12.1 applies only to tort claims against political subdivisions.  The district court erred in applying the three-year statute of limitations of N.D.C.C. § 32-12.1-10 to the Finstads’ contract claims.  As conceded by the Finstads at oral argument, to the extent their claims sound in tort, the district court properly applied section 32-12.1-10 to their tort claims.  On remand, the district court must determine whether the ten-year statute of limitations of N.D.C.C. § 28-01-15 or the six-year statute of limitations of N.D.C.C. § 28-01-16 applies to the Finstads’ contract claims.

III.

[¶17] Having determined the district court erred in applying the three-year statute of limitations of N.D.C.C. § 32-12.1-10 to the Finstads’ contract claims, we now must determine if the district court properly granted summary judgment in the Water District’s favor. The standards that govern summary judgment are well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

Missouri Breaks, LLC v. Burns
, 2010 ND 221, ¶ 8, 791 N.W.2d 33 (quoting 
Lucas v. Riverside Park Condominiums Unit Owners Ass’n
, 2009 ND 217, ¶ 16, 776 N.W.2d 801).

[¶18] In its memorandum opinion granting summary judgment, the district court noted that the parties disputed whether tilling the land was permitted under the restrictions contained in the option.  The Water District claimed tilling was in violation of the contract, while the Finstads maintained that tilling was necessary in order to seed hay or pasture.  The district court also stated: 

It is clear from the factual information presented that the [Finstads] would appear to have a valid claim given all of the activity that was used to deny them their right to have the leasebacks.  However, the statute of limitations applied herein prevents this Court from exercising jurisdiction.  The statute is an absolute bar to the [Finstads’] claim.  

The district court based its determination that no genuine issues of material fact existed on its application of the three-year statute of limitations of N.D.C.C. § 32-

12.1-10 to the Finstads’ claims.  Section 32-12.1-10, N.D.C.C., was improperly applied to the Finstads’ contract claims.  We therefore conclude the district court erred in granting summary judgment because genuine issues of material fact existed.

IV.

[¶19] We reverse the district court judgment and remand for further proceedings. 

[¶20] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom