STATE OF NEBRASKA, PLAINTIFF, v. STANTON COUNTY, DEFENDANT.

FILED JANUARY 15, 1917.   No. 18902.

1. Decision Adhered to. The decision in *State v. Douglas County*, 18 Neb. 601, holding that sections 46, 47, ch. 31, Gen. St. 1873 (Ann. St. 1911, secs. 10094, 10095) are valid, is adhered to.

2. **Limitation of Actions:** ACTION BY STATE: STATE FUNDS. Money levied and collected by county authorities under those sections, and transferred to the general fund of the county, belongs to the state and is a part of the revenue of the state within the meaning of section 7581, Rev. St. 1913. The statute of limitations does not apply to an action to recover the same from the county.

3. **States:** PUBLIC FUNDS: APPROPRIATIONS: CONSTITUTIONAL PROVISIONS. Those sections of the statute do not constitute appropriations of the public money within the meaning of the constitutional provisions in regard to appropriating the money of the state.

4. **Insane Persons:** CLAIM AGAINST COUNTY. The trustees are by those sections required to fix the amount to be paid by each county for "board and care" of patients domiciled in such counties, respectively, by computation of the "sum actually paid" by the state. When no question is raised as to whether the amount so determined is accurate and right, it is not necessary to determine what remedy, if any, exists for correcting the amounts so charged.

5. ———: ———: ACTION. It is not necessary to present the state's claim for such money to the county board of the delinquent county under section 5638, Rev. St. 1913, before bringing action to recover the same. Such action is not based upon an account or claim against the county within the meaning of that section.

6. ———: ———: INTEREST. The county is properly charged with interest upon money so collected and wrongfully withheld by the county.

Action to recover for care of insane persons. Case referred, with report that plaintiff recover, and defendant excepts. *Exceptions overruled, report confirmed, and judgment entered.*

*Willis E. Reed, Attorney General,* and *George W. Ayres,* for plaintiff.

*T. J. Doyle* and *Virgil L. Horton, contra.*

SEDGWICK, J.

This action was begun in this court to recover from Stanton county for the board and care of patients committed to the state hospital for the insane from said county, under sections 10094, 10095, Ann. St. 1911. The case was referred to J. H. Broady, Esquire, as referee to report his findings of fact and conclusions of law. The

referee reported that the state ought to recover $2,214.65, with interest thereon to the date of the report, April 7, 1916, amounting altogether to $5,448.96. The defendant filed exceptions to the report and argument was duly had thereon.

The first contention is that the statute is unconstitutional and void. The sections referred to are as follows: "Section 10094. The board of trustees shall from time to time fix the sum to be paid per week for the board and care of patients, and to arrive at such sum shall estimate the total outlay as far as possible from the sums actually paid per annum; and the weekly sum so fixed shall be the sum said hospital shall be entitled to demand for the keeping of any patient, and the certificate of the superintendent, attested by the seal of the hospital, shall be evidence in all places, as the amount due as fixed.

"Section 10095. The superintendent shall certify to the auditor of state on the first days of March, June, September, and December the amount (not previously certified by him) due to said hospital from the several counties having patients chargeable thereto, and said auditor shall pass the same to the credit of the hospital. The auditor shall thereupon notify the county clerk of each county so owing, of the amount thereof, and charge the same to said county, and the board of county commissioners shall add such amount to the next state tax to be levied in said county, and pay the amount so levied into the state treasury."

The question of the constitutionality of this statute was involved in the early case of *State v. Douglas County*, 18 Neb. 601, and was discussed quite at large both in the majority opinion, in which it was held that the statute was constitutional, and in the dissenting opinion. This case was cited in a later case in which it was said: "There was filed in that case a dissenting opinion by Chief Justice Maxwell, so that the propositions therein discussed cannot as yet be recognized as

.settled beyond question; indeed, having regard simply to the weight of argument, we believe the views of the chief justice should have prevailed." *Baldwin v. Douglas County,* 37 Neb. 283. It is now strenuously insisted that, as the opinion in *State v. Douglas County* was not unanimous, and in view of the later criticism, that decision should be overruled and the statutes held to be unconstitutional. This argument is based largely upon the proposition that the Constitution forbids double taxation. It appears that the state has continually levied taxes sufficient to support the state hospital for the insane and pay all its expenses. The citizens of Stanton county paid their just proportion of the taxes so levied, and to now levy a county tax upon the citizens of that county to be paid to the state for the same purpose, it is contended, is double taxation upon that county. This argument is presented at large by Chief Justice Maxwell in his dissenting opinion in *State v. Douglas County, supra.* The evidence shows that the supervisors of the county of Stanton levied taxes from year to year under this statute; that some of the taxes so levied were remitted to the state treasury pursuant to the statute, and other taxes so levied in various years were retained in the county insane fund until a sufficient amount had accumulated with which to pay this claim of the state, and was afterwards by order of the county board transferred from the county insane fund to the county general fund. It seems very doubtful, to say the least, whether the county, after having levied these taxes under this statute with which to reimburse the state as the statute provides, could, after the money was collected and in the county treasury, for the purpose of retaining the money in its general fund, assert the unconstitutionality of the statute under which the money had been levied and collected. As the question of the constitutionality of this statute is necessarily involved and is also urged in the case of *State v. Gage County,* p. 753, *post,* which is submitted with this case, and it appears that other counties in the

state are interested in the same question, we have upon examination concluded that we are not required to overrule the decision in *State v. Douglas County, supra.* Clearly the question whether the state shall by general taxation support and provide for the poor, the insane, and the unfortunate, or this duty shall be devolved upon each county as to the citizens domiciled therein, is a question of public policy to be determined by the legislature.

The statute under consideration appears to determine that question and to devolve that duty upon the respective counties. The state may not levy more taxes than necessary for public purposes. If all the counties of the state had promptly complied with this statute, the necessary state levy for the support of the insane would have been reduced. In such case state levy would be necessary to maintain the institutions and to care for the strangers not domiciled in the state. For these purposes the citizens of each county of the state would be required to contribute their proportion. Many of the counties have complied with this statute. If others now comply with it, necessary state levies for the support of these institutions will be reduced and there will be no necessary inequality of taxation.

It is also urged that the statute of limitations has run against the claim of the state: "Every claim and demand against the state shall be forever barred, unless action be brought thereon within two years after the claim arose. Every claim and demand in behalf of the state, except for revenue, or upon official bonds, or for loans or moneys belonging to the school funds, or loans of school or other trust funds, or to lands or interest in lands thereto belonging, shall be barred by the same lapse of time as is provided by the law in case of like demands between private parties." Rev. St. 1913, sec. 7581. If this demand is to recover revenue of the state, it comes within the exceptions, and the statute of limitations does not apply. "Revenue" is thus defined in

Webster's New International Dictionary: "The annual or periodical yield of taxes, excise, customs, duties, rents, etc., which a nation, state or municipality collects and receives into the treasury for public use; public income of whatever kind." In *State v. Ewing*, 22 Kan. 708, it is said that the word "revenue" is "broad and general, and includes all public moneys which the state collects and receives, from whatever source and in whatever manner." This definition is approved in *City of Omaha v. Hodgskins*, 70 Neb. 229. In this case, when this money had been collected under this statute, there was a continuing duty on the part of the county to turn the money over to the state, and, as this court said in *City of Chadron v. Dawes County*, 82 Neb. 614; "In such a case, as between the county and city or village, the county does not hold such collections in its own right, but the possession of the one is the possession of the other." In *New Orleans v. Fisher*, 180 U. S. 185, it was said: "As the collections were held in trust, the statute of limitations constituted no defense." In any view of the case the statute of limitations has no application here.

The statute, by requiring each county to pay for the board and care of insane patients who are domiciled in the county, does not make an appropriation of public money, and is not affected by the constitutional provisions in regard to appropriations. When the legislature makes the annual appropriations for the support of the insane, it takes into consideration the payment made by the counties, and should make appropriation only for the probable deficiency.

When the trustees from time to time fix the sum to be paid per week for the board and care of patients, they are required to fix it as the "sum actually paid," that is, the counties shall be charged the actual cost of the "board and care" of the patients which the policy of the statute was to require the counties to provide for. It is not necessary in this case to determine what the

remedy of the taxpayer would be if the amount fixed was excessive, as no such question is presented.

It was not necessary to present this claim to the board of county commissioners. It is not an action in contract; it is not based upon an account or claim against the county within the meaning of section 5638, Rev. St. 1913. The money was collected for and belonged to the state, and was wrongfully withheld by the county. While so wrongfully held the county is properly chargeable with the use of the money, and should pay interest thereon, as found by the referee. It was not withheld by the taxpayers, but by the county itself in its corporate capacity by action of its board of commissioners.

The exceptions to the report of the referee are overruled, the report is confirmed, and judgment entered accordingly. Interest will be added from the date of the report of the referee to the date of this judgment.

JUDGMENT ACCORDINGLY.