SCHOOL DISTRICT No. 12, RESPONDENT, *v.* PONDERA COUNTY, APPELLANT.

(No. 6,729.)

(Submitted January 17, 1931. Decided March 16, 1931.)

[297 Pac. 498.]

344

Mr. L. A. *Foot*, Attorney General, and Mr. E. E. *Sweitzer*, County Attorney of Pondera County, for Appellant, submitted a brief; Mr. C. N. *Davidson*, Assistant Attorney General, argued the cause orally.

Mr. Art. *Jardine*, for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

"A question of difference" having arisen between School District No. 18 of Pondera county and the county of Pondera over a claim presented by the school district and rejected by the county commissioners, the question as to the respective rights of the parties in and to certain moneys collected by

the county treasurer was submitted to the district court pursuant to the provisions of section 9872, Revised Codes 1921, on an agreed statement of facts. The statement, which automatically became the findings of the court, is substantially as follows:

During the period from 1920 to 1929 the county has annually collected "large sums of money" as interest and penalties on sums paid as delinquent taxes on property within the school district and on which the school district had annually levied taxes for school purposes. All of the money thus collected has annually been deposited in the general fund of the county and used and expended as county general funds.

In August, 1929, the school district filed with the board of county commissioners its verified claim for and made demand for the payment to it of, its proportionate share of all moneys so collected, which claim and demand were rejected. To save the trouble and labor of computation, it was agreed that the matter be considered as though the claim filed contained an itemized statement of the exact amounts claimed for each of the years covered, and that the proceeding "be determined on the basis of either a suit for an accounting or a suit for money had and received, whichever may be applicable."

The divergent positions of the parties are stated; that of the school district being that it is entitled to the proportion of all interest and penalties collected which the taxes levied for school purposes bears to the total taxes levied in each year; while the county takes the stand that under the law the county is entitled to the full amount of such collections, but that in any event any claim of the school district is barred by the statutes of limitation. It is agreed that any applicable statute of limitation may be considered as though specifically pleaded.

On the facts submitted the court concluded as a matter of law that the school district was entitled to judgment that the county account for and pay over the district's proportionate share of all penalties and interest on delinquent taxes paid in

or collected on property within the district during the five-year period immediately preceding the filing of the submission of the controversy. Judgment followed. The county has appealed from the judgment; it presents for our consideration the following questions:

1. Is the school district entitled to its pro rata share of interest and penalties paid on delinquent taxes?

Nowhere in the Codes is there specific direction as to the ▆▆▆▆ disposition to be made of sums collected as interest and penalties on delinquent taxes paid, other than in section 2234, Revised Codes 1921, which reads in part: "Whenever property sold to the county, pursuant to the provisions of this Chapter, is redeemed as herein provided, the moneys received on account of such redemption must be distributed as follows: The original tax and twenty per cent paid in redemption must be apportioned between the state and county in the same proportion that the state tax bears to the county tax, and the balance must be paid to the county. The county treasurer must keep an accurate account of all moneys paid in redemption of property sold to the county," etc. The section was amended, effective March 16, 1929, to read: "The original tax and the penalty and interest thereon paid in redemption must be apportioned and pro-rated to the credit of all the various funds, including state, school, school district, or town in the ratio of their respective shares of the original tax. * * * ." (Chap. 164, Laws of 1929.)

It will be noted that this direction applies only to the disposition of moneys received on redemption of property "sold to the county." While, undoubtedly, a large proportion of the property sold for delinquent taxes in the manner prescribed by law is "struck off" to the county by reason of the fact that when offered by the treasurer "there is no purchaser in good faith for the same" (sec. 2191, Rev. Codes 1921), the sale is a public one at which it is contemplated private citizens will make purchases, and there is nothing in the record to show that a substantial part, or all, of the moneys here involved

was not paid to the county on redemption of property sold to private purchasers "in good faith."

The general rule is that "unless otherwise directed, interest, penalties and costs collected on delinquent taxes follow the tax, and go to the state, county or city, according as the one or the other is entitled to the tax itself; and in cases where two or more of these are interested in the tax, such interest and penalties should be apportioned among them in the ratio of their respective shares of the tax. But the legislature may change this rule and dispose otherwise of interest and penalties." (37 Cyc. 1594.) Under this rule a school district is clearly entitled to its proportionate share of the interest and penalties paid on redemption of property purchased by private citizens, as the legislature has certainly not changed the general rule with respect to such moneys. But has the legislature changed the rule with respect to interest and penalties paid on redemption of property "sold to the county"?

It is true that section 2234 above, before amendment, provided that twenty per cent of the interest and penalties should be apportioned between the state and county "and the balance must be paid to the county"; and prior to 1923 the law declared that "on the thirtieth day of November of each year * * * all unpaid taxes are delinquent, and thereafter the county treasurer must collect, for the use of the county, an addition of ten per cent." (Sec. 2175, Rev. Codes 1921, repealed by Chapter 96, Laws of 1923.)

While the question here presented has never been before this court, the above provisions have been given some consideration with respect to their application to city taxes, also not mentioned in the sections. Thus it was held that the change to semi-annual payment of taxes effected by Chapter 96 above, applies to city taxes, though not there mentioned (*Thomas* v. *City of Missoula*, 70 Mont. 478, 226 Pac. 213), and that the provision found in section 2175, compelling the county treasurer to collect a penalty "for the use of the county" did not

apply to city taxes, and, with reference to the section here relied upon, this court has said: "Sections 2234 and 2235 do not mention town or city taxes and at first blush an obscurity is suggested, but when these sections are construed with section 5214 the legislative intent is plain." After quoting the above rule from Cyc., the court declared: "We do not find that the legislature has changed the rule with respect to city taxes collected by the county treasurer," who acts but as agent for the city, and held that a city is entitled to its pro rata share of interest and penalties collected on payment of delinquent taxes. (*State ex rel. City of Wolf Point* v. *McFarlan*, 78 Mont. 156, 252 Pac. 805, 807.)

Thus it is apparent that, in spite of the wording of section 2234, the legislative intent was not that all of the interest and penalty money collected should go to the county, except as to the small amount allowed the state. These additions are not a part of the tax, but a mere creation of the legislature and, as a general rule, that body may dispose of them as it likes, regardless of the purpose of the tax, as against the objection that public moneys raised for one purpose cannot be used for another; but even so, the legislature is bound in dealing with such funds, to observe the prohibition contained in the "equal protection" clauses of the state and federal Constitutions. (See Cooley on Taxation, 4th ed., 3573.)

In a controversy similar to that under consideration, the supreme court of North Dakota held an Act which attempted to divert a part of the interest and penalties collected, to cities, but to exclude villages, townships and rural schools from like favor—an Act in effect just what the county here claims our section 2234, as construed in the *McFarlan Case*, provides—invalid as contravening the "equal protection" clause of the Constitution, in that it would relieve the favored municipalities of a part of the burden of taxation to the detriment of other bodies politic, not so favored. The court declared: "It is no answer to this constitutional objection to urge that the sums contributed by city taxpayers for interest and penalties

ought to belong to the city. If this is true as to the city, it is also true of every body politic in the county.'' (*State ex rel. Mitchell* v. *Mayo*, 15 N. D. 327, 108 N. W. 36, 38.) North Dakota thereafter enacted a law similar to Chapter 164, Laws of 1929, which was upheld as avoiding the defects which condemned the former Act. (*Rosedale School District* v. *Towner County*, 56 N. D. 41, 216 N. W. 212.)

Under the authorities cited, the construction of section 2234 asked by the county—strictly according to its letter—would condemn the provision as unconstitutional, while under that contended for by the school district, the Act will be valid. If a statute is capable of two constructions, one of which will condemn it as unconstitutional while the other will preserve it, it is the duty of this court to give to the statute that construction which will vitalize it. (*State ex rel. Northern Pacific Ry. Co.* v. *Duncan*, 68 Mont. 420, 219 Pac. 638; *State ex rel. Boone* v. *Tullock*, 72 Mont. 482, 234 Pac. 277.)

''It is a familiar rule that a thing may be within the letter of a statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.'' (*Holy Trinity Church* v. *United States*, 143 U. S. 457, 36 L. Ed. 226, 12 Sup. Ct. Rep. 511, 512), and ''a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers.'' (*Riggs* v. *Palmer*, 115 N. Y. 506, 509, 12 Am. St. Rep. 819, 5 L. R. A. 340, 22 N. E. 188, 189.) There is a presumption existing against the construction of a statute which would render it ineffective, inefficient, or which would cause grave public injury, as well as where it would render the statute unconstitutional. (*Bird* v. *United States*, 187 U. S. 118, 124, 47 L. Ed. 100, 23 Sup. Ct. Rep. 42.)

Applying the foregoing rules of construction to a statute which provided that ''all delinquent taxes'' collected during a given period should be distributed to the general county fund and general school fund of the county in which collected, the supreme court of New Mexico held that, as a

literal construction would condemn the statute as unconstitutional, the word "all" must be held to be used in a restricted sense, and not to include taxes levied for city purposes. (*Territory ex rel. City of Albuquerque* v. *Pinney,* 15 N. M. 625, 114 Pac. 367.)

So here, the statute under consideration can be rendered effective and constitutional by declaring that the provision as to the division of interest and penalties therein provided for applies only to amounts collected on the payment of delinquent taxes levied for state and county purposes, and does not apply to payments made in connection with taxes levied for the support of other bodies politic. As stated in *Holy Trinity Church* v. *United States,* above, "this is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include any act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, make it unreasonable to believe that the legislature intended to include the particular act."

But it is urged that because section 2234 was amended in 1929 to read as we now interpret the section, we must presume that a change in the law was made and that, originally, it did not so provide, citing 36 Cyc. 1165. Like most rules, the rule that a change in the law is presumed from the fact of amendment has its exceptions, among which is the rule that the presumption falls when its indulgence would violate a constitutional provision or the intention of the legislature. (*Davis* v. *Florida Power Co.,* 64 Fla. 246, Ann. Cas. 1914B, 965, 60 South. 759), and a change in a statute may be made merely to express more clearly the original intention of the legislature. (*State ex rel. Rankin* v. *Wibaux County Bank,* 85 Mont. 532, 281 Pac. 341.) Thus an amendment to a statute making it directly applicable to a particular case is not necessarily an admission on the part of the legislature that

it did not originally cover such a case. (*Rural Independent School Dist.* v. *New Independent School Dist.*, 120 Iowa, 119, 94 N. W. 284.)

Here, a reasonable inference from the fact of amendment is that, in view of the decision in *State ex rel. City of Wolf Point* v. *McFarlan,* above, the legislature expressed more clearly its original intention that the division provided for in section 2234 referred only to interest and penalties on taxes levied for general state and county purposes, and did not apply to the case of taxes levied for the upkeep of any "school, school district, city or town," and because of what is heretofore said, we now hold that such was the intention of the legislature concerning, and the effect of, section 2234 before amendment.

2. The county asserts that, although the first question be answered in the affirmative, the judgment must be reversed because of the district's failure, in each year up to 1929, to present a claim for the amount which should be apportioned to it.

Section 4605, Revised Codes 1921, relied upon under this assertion, reads: "No account must be allowed by the board [of county commissioners] unless the same is made in separate items * * * verified by affidavit showing that the account is just and wholly unpaid, * * * Every claim against the county must be presented within a year after the last item accrued."

In a proper case, the presentation of a claim to the board of county commissioners is a condition precedent to the commencement of an action against the county for its recovery (*Greeley* v. *Cascade County,* 22 Mont. 580, 57 Pac. 274; *Powder River Cattle Co.* v. *Commissioners of Custer County,* 9 Mont. 145, 22 Pac. 383); but not all obligations of the county come within the purview of the section. Section 4605, with its companion sections, has to do with claims or accounts against the county, the general nature or character of which is indicated in the section itself. (*Flynn* v. *Beaverhead*

*County,* 54 Mont. 309, 170 Pac. 13.) The claims which must be presented to the board are those involving the exercise of discretion on the part of that body,—those which the board might, on a determination of fact questions, reject, which rejection, on appeal therefrom, might or might not be upheld on the facts. The section has no application to demands depending for their determination upon a decision of a clear-cut question of law involving the application of statutes to a definite state of facts, and leaving no room for the exercise of discretion. The demands of the school district fall within the latter class and are not based upon claims against the county within the meaning of the statutes requiring presentation to the board of county commissioners. (*Village of Mountain Home* v. *Elmore County,* 9 Idaho, 410, 75 Pac. 65; *Drainage District* v. *Ada County,* 38 Idaho, 778, 226 Pac. 290; *City of Fergus Falls* v. *Board of Commrs. of Otter Tail County,* 88 Minn. 346, 93 N. W. 126; *State* v. *Stanton County,* 100 Neb. 747, 161 N. W. 264; see, also, *Kalman* v. *Treasure County,* 84 Mont. 285, 275 Pac. 743.)

3. The third and last question presented is as to whether the claim of the district, or any part thereof, is barred by any existing statute of limitations.

It will be remembered that it was agreed that the controversy might be disposed of by the trial court on the theory that it is an action for an accounting or a suit for money had and received, and that any applicable statute of limitations might be considered as though specially pleaded. In spite of this agreement the county contends that the applicable statute of limitations is section 9033, subdivision 1, Revised Codes 1921, which reads: "An action upon a liability created by statute other than a penalty or forfeiture" shall be brought "within two years."

While the liability of a county treasurer and his bondsmen for the safekeeping of moneys of the county and all moneys required by statute to be deposited with him is one imposed by express statutory requirement, and an action thereon falls

within the limitation of the above section (*Gallatin County* v. *United States Fidelity & Guaranty Co.*, 50 Mont. 55, 144 Pac. 1085), this proceeding is not such an action. Here the treasurer is not a party and the action is against the county only, either "for an accounting" or "for money had and received." But if the action were against the treasurer for failing to pay over the interest and sums collected as penalty, the above section would not be applicable, as the liability of the treasurer would be on an implied promise, as trustee of the funds, to pay them over, and the applicable statute would be subdivision 3 of section 9031,—a three-year limitation on "an action upon an obligation or liability, not founded upon an instrument in writing, other than a contract, account or promise." (*City of Butte* v. *Goodwin*, 47 Mont. 155, Ann. Cas. 1914C, 1012, 134 Pac. 670.)

But, while the funds in the hands of the treasurer were trust funds, they ceased to be such when they were diverted to the use of the county and paid out by the treasurer on order of the county; it then became but money had and received for the use of another and relief is obtainable within the period prescribed for personal suits of like nature. (*Rosedale School Dist.* v. *Towner County*, above; *School Directors* v. *School Directors*, 105 Ill. 653; *Strough* v. *Board of Supervisors of Jefferson County*, 119 N. Y. 212, 23 N. Y. 552.)

An action to recover money had and received is one based on an implied contract and is governed by the limitations applicable to actions on such contracts and these are applied to all contractual obligations which are not express but which arise by implication of law from the acts or agreements, written or unwritten, of the parties, although the obligation may, in a measure, arise out of and depend upon special statutory provisions with reference to the obligation. (19 Am. & Eng. Ency. of Law, 2d ed., 274; *Metropolitan R. R. Co.* v. *District of Columbia*, 132 U. S. 1, 33 L. Ed. 231, 10 Sup. Ct. Rep. 19.)

The trial court correctly applied subdivision 1 of section 9030, Revised Codes 1921, which declares that "an action upon a contract, account, promise, not founded upon an instrument in writing" must be brought within five years.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.