STATE ex rel. VALLEY CENTER DRAIN DISTRICT, Respondent, v. BOARD OF COUNTY COMMISSIONERS OF BIG HORN COUNTY et al., Appellants.

(No. 7,435.)

(Submitted September 23, 1935. Decided November 6, 1935.)

[51 Pac. (2d) 635.]

582

*Mr. C. C. Guinn,* County Attorney of Big Horn County, for Appellants, submitted a brief and argued the cause orally.

*Messrs. Burke & Collins,* for Respondent, submitted a brief; *Mr. E. E. Collins* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Big Horn county. By its judgment the court directed the issuance of a writ of mandate directed to the county commissioners of the county requiring them to pay certain sums of money.

Application for the writ was made by the Valley Center Drain District, a corporation organized under the provisions of the Montana Drainage District Act, sections 7265 to 7364, Revised Codes of 1921. The drainage district corporation appeared as relator. The action was directed against the board of county

commissioners of Big Horn county, and H. C. Clifford, B. H. McCarty and David Kamp, as such board of county commissioners. The application recited the creation of the district in the year 1921; that W. D. Carper was the president thereof; that the district constructed and had in operation a drainage system in the county serving lands and corporations, including the drainage of certain highways in the county; that by virtue of the Drainage District Law the district, through its board, made regular assessments against the county for benefits to highways; that previous to 1931 all of such assessments so made were paid; and that for the years 1931, 1932, 1933 and 1934, assessments were made in the approximate sum of $1,559.28 per year and have never been paid.

The petition was accompanied and supported by an affidavit of D. W. Carper, president of the board of commissioners of the drain district. In it the history of the creation of the district was set forth, together with the facts as to the operation thereof, and the benefits to the highways of the county. The affidavit also recites that for the purpose of raising funds to pay the cost of constructing the drainage system, certain bonds were sold to mature over a period of fifteen years; that for the purpose of providing a sinking fund for the retirement of the bonds as they matured and for the payment of interest, costs of maintenance and administration, the commissioners of the district levied assessments in the stated amounts for the years indicated; that all of the levies and estimates computed against Big Horn county were at the appropriate time in each year certified and filed with the clerk of the district court and set for hearing, heard, approved and adjudicated by a judge of the court, and thereafter certified to the county treasurer, as required by law; that by virtue of the certification, the hearings thereon, and the adjudications thereof by a judge of the court, the drainage district was given judgments in accordance with the Drainage District Act against the county of Big Horn for the various sums; and that all of the sums are unpaid and now due and payable.

An alternative writ of mandate was issued by the court, and the matter came on for hearing on the pleadings, including an answer and a reply. The answer was in effect a demurrer, as it merely challenged the legality of the whole proceedings, including the inclusion of Big Horn county in the original order. The reply is a denial of the new matter. No testimony was taken, but a stipulation was entered into between the parties to the effect that the action was submitted on questions of law raised by the answer, and that the facts set forth in the application and the affidavit should be taken as admitted and true. The stipulation further provided that the district was regularly organized under the provisions of law on the nineteenth day of September, 1921; that Big Horn county was made a party to the proceedings; that it had highways within the district; and that the court by its order provided for assessments against the county for 38.46 miles of county highway declared by the court to be benefited by the system. It was also stipulated that there was not a sufficient amount of money in the general or road funds of Big Horn county at the time to pay the current expenses of the county and to pay the assessments, and that the county commissioners had not at any time included the amount necessary to pay the assessments in its various budgets, and that no special levies had been made therefor.

It will be observed that the legal creation of the district was admitted by all parties, and that the facts relative to the annual levies by the commissioners of the drainage district, the certification thereof to the district court, and the consideration and allowance thereof by a judge, were likewise admitted. The questions involved are obviously only questions of law.

It is interesting to note that the prayer of the petition demanded a writ of mandamus commanding the county commissioners to issue warrants in payment of the amounts due the drainage district and to make payments of such indebtedness. The judgment and order of the court recites that "the validity of the assessments in question depends wholly upon section 7310 of the Revised Codes of Montana," and that the subsequent

amendment to that section could not be considered. The court then made the following finding: "However, I feel that the section is broad enough to grant the relator the relief prayed for, in view of the fact that no objection was raised by the respondents or their predecessors to the formation of the district and the imposition of the assessments." The court then entered judgment in favor of the district and against the commissioners for the relief demanded and ordered a writ of mandate to be issued by the clerk, commanding the county commissioners to make the payment. The writ was duly made and executed by the clerk.

The county commissioners appealed. They assign four specifications of error, as follows: (1) That the application for the writ does not state facts sufficient in law for the issuance of such writ; (2) that the application shows affirmatively that relator is not entitled to the relief sought; (3) that the court has no jurisdiction to order assessments to be paid because they were never legally made; and (4) that the court erred in granting the peremptory writ of mandate.

As we view the matter, the specifications of error really involve but two questions. The first one has to do with the creation of the district, and particularly with the scope of the order including Big Horn county and providing for assessments against the county to compensate for the benefits which the court declared the county would receive from the construction of the improvements. The other question has to do with the propriety of granting a writ directing the payment of the annual assessments.

The question involving the inclusion of the benefits to the county and the assessments authorized against it arises from the contention of the commissioners, the appellants, to the effect that section 7310, Revised Codes 1921, being a section of the Drainage Act, did not authorize the inclusion of the county in the manner indicated. In other words, it is urged that the court was without authority to include the county and provide for assessments against it for benefits. The section appears in

a sequence of sections providing for the organization of drainage districts, hearings connected therewith before the court, and kindred matters. It has particular relation to the report of the commissioners appointed by the court in connection with the organization, and at the time of the creation of the district read as follows: "And if any corporation would, in the judgment of said commissioners, derive special benefits from the whole or any part of such proposed work, the commissioners shall so report and assess those benefits and assess against the same its proportionate share of the costs of said proposed work. The word 'corporation,' whenever in this Act contained, shall be construed to include: 1. Railroad companies; 2. Other private and quasi public corporations of all kinds; 3. Towns; 4. Cities; 5. Villages; 6. Other drainage districts; and, 7. Counties."

Section 7307, Id., in effect at the time of the creation of the ▉ district, has relation to benefits to be derived by the proposed improvement and the assessments to be made against the lands and easements affected and benefited thereby. This section was amended and elaborated by Chapter 169 of the Session Laws of 1929.

It is argued by appellants that the section was not originally broad enough to justify assessments against a county on account of benefits to the highways. It is their contention that under the law as it originally stood, costs of construction and maintenance could only be assessed against the lands and easements and not against a county unless it owned lands. We cannot agree with this contention. The whole Act must be read together and all of its provisions considered. It will be observed that section 7310, supra, does provide for the levy of assessments for benefits to counties. That section, taken alone as it originally stood, might be capable of a restrictive interpretation to the effect that counties could only be charged and assessed for lands owned rather than for highway benefits. Such a restricted interpretation, however, will not stand up in the light of other provisions of the Act. It will be noted that section 7332, Id., one of the sections of the Act, provides: "Assess-

ments against all public corporations, or any private corporation not owning land within the district, shall be payable to the county treasurer wherein the court having jurisdiction of the district is located, on or before the first day of September of each year.'' Section 7357, another section of the Act, provides, in effect, that assessments against lands or corporations as soon as confirmed by the court shall constitute judgments in favor of the drainage district and against ''said land or corporation.'' Section 7331 provides that the rules of law applying to the collection of taxes and the sale of land for taxes shall apply to the collection of assessments when levied against lands.

It will thus be observed that a distinction is made between assessments based on the ownership of land owned by individuals or corporations, and assessments against corporations where no tax lien is created against land but where the levy becomes an independent obligation of the corporation as provided in section 7332, supra. The last-named section provides for the payment of the latter class of assessments on September 1 of each year. It will be observed that this is not a tax-paying period and, therefore, that the two types of assessments are not only separate and distinct but are payable at different times. It has been held in other jurisdictions that such assessments do not constitute taxes. (*Lake Arthur Drainage District* v. *Board of Commissioners of Chaves County*, 29 N. M. 219, 222 Pac. 389.)

We are of the opinion that the law, as originally enacted and as it existed in 1921 when this drainage district was created, was broad enough to include an assessment against a county for benefits to highways. (See *Drainage District* v. *Richardson County*, 86 Neb. 355, 125 N. W. 796.) No authority to the contrary has been cited. In any event we do not believe that the subsequent amendment of the law (sec. 7307, Rev. Codes 1921) affected the situation. It is true that the amendment did seek to make the provision broader and more comprehensive. The amendment was not necessarily an admission by the legislature that the statute was not originally broad enough to cover

that character of assessment. (*School District No. 12* v. *Pondera County*, 89 Mont. 342, 297 Pac. 498.)

The contention that the inclusion of Big Horn county in the original order creating the district and the provision with relation to benefits and assessments in compensation therefor constituted error is untenable. We think the court correctly interpreted the law in that respect when the order was made.

It having been stipulated that the drainage district itself was legally created and in existence, and it having been determined that the county was properly included therein because of benefits to highways, and it having been stipulated that the annual charges against the county were regularly determined by the proper officers of the drainage district and were filed with the clerk of the district court, set for hearing, and heard, considered, approved and adjudicated by a judge thereof, and that in accordance with the law the amounts became judgments of the court in favor of the drainage district and against the county, it at once becomes obvious that it was the duty of the county to pay and discharge such judgments. In ordinary circumstances, the payment of judgments is controlled by general law, but here the Act specifically controls the matter and provides that such payments must be made on or before September 1 of each year. Such specific provision must be held exclusive and controlling. What, then, is the proper procedure to be employed by the county in the payment of the judgment liabilities?

The judgments against the county are not unliquidated claims. They constitute ''amounts fixed by law'' as mentioned in section 4811, Revised Codes 1921, as amended by Laws 1923, Chapter 79, section 1, and are not required to be audited by the board. It is true that the law required audit by the court, but that was done, and by virtue thereof the obligations have become liquidated claims—in fact judgments. But for the provisions of the Budget Law (Chap. 148, Laws 1929), there would have been nothing remaining to be done except for the county clerk and the chairman of the board of county commissioners to execute

and issue appropriate warrants in payment, but the Budget Law has placed restrictions on the issuance of warrants in certain cases. It has created additional requirements necessary to be observed in the issuance of warrants in excess of the budget. The stipulation is to the effect that these amounts were never budgeted and that no special tax was ever levied therefor, and it is admitted that the amounts cannot be paid without encroachment on funds already budgeted. All of this may be true, but the fact still remains that the Budget Law does provide for emergency expenditures and that warrants may be issued for them and when so issued they must be designated emergency warrants.

In legal effect, the judgments in reality are liquidated claims of the same character as the bond coupons under consideration in the case of *Kalman* v. *Treasure County*, 84 Mont. 285, 275 Pac. 743. They are subject to the same considerations applied in the *Kalman Case*, except that here the provisions of the Budget Law must be observed. That law provides that on the happening of certain emergencies or to meet mandatory expenses required by law, the county commissioners may at any meeting adopt a resolution stating the facts constituting the emergency and enter the same on their minutes, and may thereafter make the expenditures and incur the liabilities necessary to meet such emergency without further notice or hearing; that all emergency expenses shall be met by the issuance of emergency warrants drawn against the fund or funds properly chargeable with such expenditures; and that the county treasurer is authorized and directed to pay such emergency warrants with any money in such fund or funds available for such purposes, and if at any time there shall not be sufficient money available in such fund or funds to pay such warrants, then such warrants shall be registered, bear interest, and be called in for payment in the manner provided by law for other county warrants. The Act further provides that the county clerk and recorder shall include in his annual tabulation to be submitted to the board of county commissioners the total amount of emer-

gency warrants issued during the previous fiscal year, and that thereafter the county commissioners shall include in their tax levies a levy for each fund sufficient to raise an amount equal to the total amount of such warrants if any remain unpaid. It will thus be observed that the Budget Law does not constitute a legal barrier to the discharge of this indebtedness; that is, to the payment of the judgments here under consideration, which must be held to be "mandatory expenditures required by law."

Reference to the judgment discloses the fact that the court commanded the county commissioners to pay the amounts of the judgments. It cannot be said that this order of the court constituted a judgment in favor of the district and against the county for the amounts, because that would be imposing one judgment on another. Judgments already existed in favor of the district and against the county for the different amounts. The order directed the county commissioners to pay the amounts. Strictly speaking, this order was not proper.

One of the assignments of error is to the effect that the application for the writ shows affirmatively that the relator was not entitled to the relief sought. We do not hesitate to say that in the light of the facts and circumstances of this case and of all the proceedings that have obtained, the proceeding should have included the county clerk and the chairman of the board of county commissioners, as such, as respondents. But for the existence of the Budget Law, we might say that the three county commissioners, while possibly proper parties, were not necessary parties and that the county clerk and the chairman of the board were necessary parties.

In the case of *McKenzie* v. *Evans*, 96 Mont. 1, 29 Pac. (2d) 657, 661, this court held that though ordinary defects in parties were waived unless raised by demurrer or answer, there was one exception, namely, where the controversy could not be completely determined in the absence of persons not made parties, and where the right of such persons would be prejudiced by a judgment rendered in their absence. The court there cited section 9090, Revised Codes 1921, which provides, "But when

a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in,'' and said: ''If the necessary parties to a full determination of the controversy are not before the court, it is the duty of the court on its own motion to order them brought in, and this although the defendant in the action may have omitted to raise the objection of defect of parties by demurrer or answer.''

It is obvious that in any event the order directing the county ▇ commissioners to pay the amounts is erroneous because it is beyond the legal power of the commissioners to make such payments. As we have indicated, the provisions of the Budget Law have some effect in the premises, and the most that the commissioners can do under the circumstances is to order the issuance of warrants. The law provides that warrants can only be issued by the county clerk and countersigned by the chairman of the board of county commissioners. (Sec. 4811, Rev. Codes 1921, as amended.) Therefore the mandate of the court to the commissioners to make the payment was not a direction to the commissioners to perform a clear legal duty. (*State ex rel. Koefod* v. *Board of County Commissioners of Hill County,* 56 Mont. 355, 185 Pac. 147; *State ex rel. North American Life Ins. Co.* v. *District Court,* 97 Mont. 523, 37 Pac. (2d) 329.)

It must further be understood that immediate payment of actual money does not necessarily follow the fact of the establishment of liability. The county, acting through its properly constituted officials, might be able to pay the judgments in cash, or it might be forced to issue emergency warrants. In this case, in the light of the stipulation that there is not sufficient money in the treasury to pay the judgments without encroaching on the budget allotment, it at once becomes evident that the latter course must be pursued.

The order appropriate in the circumstances should be directed toward the issuance of warrants. If, however, full justice cannot be accomplished and the correct result obtained by a mandate directed to the commissioners, it becomes at once obvious

that the county clerk and the chairman of the board of county commissioners, as such, are necessary parties.

The cause is remanded to the district court, with instructions to proceed in accordance with this opinion. Each party will pay its own costs of this appeal.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.