(No. 23085.—

The People *ex rel.* Mary M. Abbe *et al.* Appellees, *vs.* Thomas D. Nash *et al.* Appellants.

*Opinion filed June 10, 1936—Rehearing denied October 15, 1936.*

Herrick, C.J., and Shaw and Wilson, JJ., dissenting.

Thomas J. Courtney, State's Attorney, (Hayden N. Bell, Jacob Shamberg, Brendan Q. O'Brien, Robert S. Cushman, and Pomeroy Sinnock, of counsel,) for appellants.

Barnet Hodes, Corporation Counsel, William H. Sexton, I. T. Greenacre, Allan J. Carter, Thomas Mason, and Joseph F. Grossman, (Ferris E. Hurd, and Alfred R. Bates, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The sole inquiry here is whether collected penalties on forfeited real estate are to be paid to the county or distributed to the various taxing bodies. No question is raised as to interest or penalties prior to forfeiture, as it is conceded that funds from this source belong exclusively to the county. The essential facts are not in dispute. The cause originated in the circuit court of Cook county, where a writ of *mandamus* was awarded directing the county treasurer and his successors in office to distribute all funds collected as tax penalties subsequent to forfeiture to the various tax-levying bodies. Since the revenue is involved and the State is financially interested in the outcome, the cause properly comes here by direct appeal.

The determination of the question at issue requires our consideration of certain sections of the revenue acts of 1853 and 1872 and the amendments to the latter. Section 129 of the Revenue act of 1872 is substantially the same as section 8 of the Revenue act of 1853 (Laws of 1853, p. 101,) except as to rates of interest. Both of these sections provided, in substance, that after forfeiture the clerk, in making up the taxes due on property for any year, should add the amount of back taxes, interest, penalties and fees, with one year's interest, (at six per cent in 1853 and ten per cent in 1872,) to the taxes of the current year, and that the aggregate amount should be collected in like manner as a tax on other property for that year. Section 229 of the Revenue act of 1872 is likewise substantially the same as section 46 of the Revenue act of 1853. (Laws of 1853, p. 114.) Both sections recite that the amount due on lands and lots previously forfeited to the State and remaining unpaid on the first day of November shall be added to the taxes of the current year and the amount thereof shall be reported against the county collector with the amount of taxes for that year, and the amount so charged shall be collected and paid over "in like manner as other taxes." Section 45 of

the Revenue act of 1853 required all interest added after forfeiture to be paid into the State treasury. It will therefore be seen that under section 46 of the Revenue act of 1853, the predecessor of section 229 of the Revenue act of 1872, there could not have been a ratable distribution of forfeiture interest between various taxing bodies because of the express provision to the contrary in section 45 above noted.

The Revenue act of 1872 as originally adopted contained no provision requiring the payment of forfeiture interest to the State, as had been required under the act of 1853. Whether this omission was intentional or otherwise is of no present consequence. The fact remains, however, that in 1879 an amendatory act supplying this omission was adopted by the legislature. This was accomplished by an amendment to section 177, being the addition of the words "and all such due and unpaid taxes shall bear interest after the first day of May at the rate of one per cent per month until paid or forfeited; parts or fractions of the month shall be reckoned as a month. And all such collections on account of interest shall be paid into the county treasury to be used for county purposes." (Laws of 1879, p. 253.) Section 129 of the act was also amended to increase the penalty following forfeiture to twenty-five per cent for a year or any part thereof.

As the matter stands, section 129, which deals with real property forfeited to the State and provides for interest after forfeiture, is substantially the same as when originally adopted in 1872, except the rate of interest was changed from ten to twenty-five per cent in 1879 and reduced to twelve per cent in 1930. On the other hand, section 177 as amended in 1879 contained at its end the following separate sentence: "And all such collections on account of interest shall be paid into the county treasury to be used for county purposes." There is nothing in this language in section 177, or in any part of section 129 preceding it, to indicate any

legislative intent to apply different rules to interest added before and after forfeiture. Section 177 must be construed with section 129 and both sections treated as a part of the whole Revenue act of 1872. Sections are purely artificial divisions of the statute. As was held in *Warner* v. *King,* 267 Ill. 82, at page 87: "A statute is passed as a whole and not in parts or sections, hence each part or section should be construed in connection with every other part or section. It is not proper to confine the attention to the one section to be construed.—2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 368; *Biggs* v. *Clapp,* 74 Ill. 335; *Cruse* v. *Aden,* 127 id. 231." This cardinal rule of statutory construction has been frequently announced in our decisions. (*People* v. *Linn,* 357 Ill. 220; *People* v. *Hughes,* id. 524; *People* v. *Whealan,* 353 id. 500.) Applying this rule, it is difficult to believe that where the legislature made provision for interest added after forfeiture by section 129 and interest added before forfeiture in the following section 177 of the same amendatory act, it was intended that the sentence, "And all such collections on account of interest shall be paid into the county treasury to be used for county purposes," should be limited only to interest added before forfeiture, especially where the entire act is silent as to any different method of distribution of interest added after forfeiture.

Appellees argue that the word "such," in the quoted sentence from section 177, necessarily limits its application to the payment of interest created by that section or to the one per cent per month interest added before forfeiture. This same argument was made and passed upon by this court in *Warner* v. *King, supra,* where the use of the word "such" in section 7 of the Adoption act was considered. There it was also argued that under proper rules of grammatical construction the word "such" must refer to the nearest antecedent. In deciding adversely to the contention this court held: "A relative word will not be read as represent-

ing the last antecedent exclusively, where the context and clear intention of the law-makers require it to represent several or one more remote. (2 Lewis' Sutherland on Stat. Const. (2d ed.) secs. 408, 409.) The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and meaning of the words, enlarged or restricted according to their real intent. * * * They must surely be read in connection with all the rest of the section—and, if necessary, the entire act—in order to obtain the true intent of the legislature." The word "all" is of much greater significance than the word "such," in our opinion. The phrase, "all such collections on account of interest," which is not restricted by language in this or any other section of the act, must be construed to cover the interest and penalties collected both before and after forfeiture, and not limited, as by the lower court, to the interest provided in section 177 alone. Subsequent amendments to different sections of the Revenue act since 1879 not only show no change in legislative intent with respect to the application of these penalties, but, as will hereafter be pointed out, indicate an express legislative intent not to amend the law to expressly provide for a ratable distribution to all other taxing bodies.

In support of the view that sections 129 and 177 should be construed together, it must be noted that in Illinois the county acts as fiscal agent of the State in collecting the taxes for all of its various political subdivisions. (*People v. Straus,* 355 Ill. 640.) It appears that in thus designating the county to supervise all tax collections the legislature has seen fit to recompense it for this added work and expense by the payment of these added amounts of interest, penalties and fees. Moreover, a consideration of the revenue laws, and other related statutes concerned with the distribution of tax moneys, shows a clear legislative intent that only the principal of the taxes levied is to be distributed to the various taxing bodies other than the county.

Section 243 of the Revenue act of 1872 defines the county collector's duties in the distribution of tax moneys to the various taxing bodies "payable to them as taxes," and requires him to distribute only the principal of the taxes, without making any reference to the interest added thereon. Any penalties imposed under this section for failure to make prompt distribution are required to be paid "into the county treasury." Section 2 of the Cities and Villages act, (Cahill's Stat. 1933, chap. 24, par. 116; Smith's Stat. 1933, chap. 24, par. 124, p. 362;) relating to the collection of taxes levied for city purposes, provides that "the tax so assessed shall be collected and enforced in the same manner and by the same officers as State and county taxes, and shall be paid over by the officers collecting the same to the treasurer of the city or village," etc. It is obvious that the term "tax so assessed," in this section, refers only to the principal of the taxes levied by the city, because the penalties before and after forfeiture are imposed by the legislature and not assessed by the city. Section 193 of the general School law (Cahill's Stat. 1933, chap. 122, par. 317; Smith's Stat. 1933, chap. 122, p. 2658;) also provides, in part, that the collector shall pay to the treasurer "the full amount of the tax certified by the county clerk." As the taxes levied by the school district do not include any interest, it follows that the county collector is obligated to pay only the amount of the taxes, without interest or penalties. Similar provisions requiring the county collector to pay over only the amount of taxes levied and certified are to be found in acts relating to the Sanitary District of Chicago, the Chicago Park District and the Forest Preserve District of Cook county, in all of which the interest added to the taxes by the legislature by way of penalty before and after forfeiture is necessarily outside of the power and jurisdiction of the various political subdivisions to determine.

The legislative changes made in section 229 since its original enactment in 1872 also refute the claim of appellees that penalties added after forfeitures should be paid

over to the various taxing bodies ratably, as other taxes. In 1917 (Laws of 1917, p. 658,) section 229 was materially amended to provide in part: "The amount due for general taxes and special assessments on lands and lots previously forfeited to the State  *  *  *  shall be added to the tax of the current year;  *  *  *  and the amount so charged for said forfeitures on general taxes and special assessments shall be placed on the tax books, collected and paid over in like manner as other taxes." By this change the amount to be distributed in like manner as other taxes was limited to the amount due for general taxes and special assessments, which, obviously, does not include interest and penalties. This provision remained in force until the 1933 session of the General Assembly, when section 229 was again amended to read: "The amount due for general taxes on lands and lots previously forfeited to the State  *  *  *  shall be added to the tax of the current year;  *  *  *  and the amount so charged shall be placed on the tax books, collected and paid over in like manner as other taxes." (Laws of 1933, p. 887.) This amendment excluded special assessments, evidently because they are not to be distributed in like manner as other taxes but go to the municipality by which they are levied. That the legislature by the amendatory acts of 1917 and 1933 meant to exclude from distribution the interest and penalties on lands and lots previously forfeited is further demonstrated by the amendment of section 229 in 1935. As then amended section 229 now in part reads: "The amount due for general taxes on lands and lots previously forfeited to the State and remaining unpaid on the first day of November, shall, except as is otherwise provided in section 129 hereof, be added to the tax of the current year;  *  *  *  and the amount so charged shall be placed on the tax books, collected and paid over in like manner as other taxes." (Laws of 1935, p. 1217.) These amendments of section 229 show that the legislature intended to exclude the penalties and

interest from distribution in like manner as other taxes, since in all of them it is not the interest and penalties resulting from forfeiture which are to be paid over, but, rather, "the amount due for general taxes on lands and lots previously forfeited to the State" which shall be paid over.

The record here contains further disclosures of the same legislative intent from the House and Senate Journals of the 1933 General Assembly when Senate Bill No. 253 was introduced, to require the county treasurer to keep separate account of all collections of interest and distribute the same *pro rata* to the various taxing bodies. This bill passed the Senate but the committee on revenue of the House of Representatives reported unfavorably on it, with a recommendation "that it do not pass," and it was thereupon tabled.

The contemporaneous construction placed upon sections 129, 177 and 229 of the Revenue act of 1872 by various county collectors throughout the State is widely divergent and therefore without much probative value. In fifty-two reporting counties all penalties following forfeiture have been distributed to all taxing bodies. In thirty-one counties the State's share of such penalties (about five per cent) has been paid to the State and the remaining ninety-five per cent paid to the county, while in sixteen counties, including Cook, all penalties following forfeiture are paid to the county. It is obvious that whether the penalties are rebated through many channels back to the various taxing bodies or simply paid over to one of them, the tax-payers, in either event, will in the end get the benefit of such payments in varying degrees. All real estate tax-payers must pay county taxes, and the comparative simplicity of accounting where the county is paid the full sum collected from tax forfeitures, rather than the delay, expense and confusion necessarily resulting from its division, as in Cook county, into over four hundred *pro rata* parts, must have been taken into consideration when the legislative policy was determined. In any event, such changes as are

desired must come through legislative rather than judicial processes.

The judgment of the circuit court requiring the distribution of interest after forfeiture as a part of the tax due each tax-levying body is reversed.

*Judgment reversed.*

Mr. JUSTICE SHAW, dissenting:

Conceding, as appellants contend, that a statute must be construed as a whole, it does not follow that such a construction may be adopted as will amount to a stretching or distortion of its plain meaning. The amendment of 1879 made no change in the provisions of section 229 requiring the additional penalty after forfeiture to be collected and paid over in like manner as other taxes. The only change in section 129 was to change the arbitrary penalty after forfeiture from ten per cent to twenty-five per cent. The change, exact wording and punctuation in section 177 are more significant. At the end of the section the period was changed to a semicolon, so that the additional language could be, and grammatically must be, considered, in effect, as one long sentence. It has one period in it, as will be noted below, but it will also be noted that a correct punctuation would substitute a semicolon for this period. As amended in 1879 the section reads: "All real estate upon which taxes remain due and unpaid on the tenth of March, annually or at the time the town or district collector makes return of his books to the county collector, shall be deemed delinquent; and all such due and unpaid taxes shall bear interest after the first day of May, at the rate of one per cent per month until paid or forfeited; parts or fractions of a month shall be reckoned as a month. And all such collections on account of interest shall be paid into the county treasury to be used for county purposes." The entire section obviously refers to but one subject—*i. e.*, delinquent taxes between the date of

the maturity and "until paid or forfeited." The period following the word "month" and before the word "and" might properly have been a comma or semicolon, but we think the meaning is as clear as though the punctuation had been perfect, while the word "such" quite clearly limits the collections which are to be paid to the county treasurer. I would consider it judicial legislation to extend the meaning of language so plain.

The briefs indulge some argument as to whether or not the provisions of section 229 amount to a legislative direction for the distribution of the penalty following forfeiture. It provides that "the amount so charged shall be placed on the tax books, collected and paid over in like manner as other taxes." I do not regard this point as one necessary for determination. If held to be an authoritative direction it would result in the same conclusion. If held not to apply, the general rule would then demand consideration, and we would necessarily hold that in the absence of express legislative direction tax penalties follow the tax. 4 Cooley on Taxation, (4th ed.) sec. 1821; *Board of Commissioners* v. *State,* 119 Ind. 473, 22 N. E. 10; *State* v. *Huffaker,* 11 Nev. 300; *School District* v. *Pondera County,* 89 Mont. 342, 297 Pac. 498; *County Comrs.* v. *Wichita,* 52 Kan. 704, 64 Pac. 621.

On the constitutional question urged by appellants it must be noted that we have heretofore held that the sum which is imposed during delinquency and before forfeiture as an addition to the tax is in legal effect a penalty even though it is called "interest." (*People* v. *Peacock,* 98 Ill. 172.) And it is even more clear that the sum imposed arbitrarily upon forfeiture is a penalty. It bears none of the attributes of interest, being a definite lump sum imposed at a fixed date for a whole year regardless of the actual time that may elapse before redemption. It is not in any sense a tax levied by the legislature within the constitutional provision, but merely a punishment incurred by a tax-payer through a

failure to perform his duty of paying taxes. In order to be a tax within the meaning of the constitutional provision it would of necessity be imposed upon all persons and property alike. This essential distinction is obvious when it is borne in mind that penalties are paid only in those cases where the tax becomes delinquent. All are taxed alike by the proper taxing bodies while penalties are incurred only by those who fail to pay. The power of the legislature to impose penalties for non-payment of taxes has long been recognized by this court, (*People* v. *Smith,* 94 Ill. 226,) and any other rule would be disruptive of all government.

HERRICK, C.J., and WILSON, J., also dissenting.