HARVEY CRAIG, APPELLEE, V. BOARD OF EQUALIZATION OF
DOUGLAS COUNTY, NEBRASKA, ET AL., APPELLANTS.

164 N.W. 2d 445

Filed January 24, 1969. No. 37046.

Clarence A. H. Meyer, Attorney General, Homer G. Hamilton, and Calvin E. Robinson, for appellants.

Ross & O'Connor and McGowan & Troia, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and WILLIAM C. SMITH, JR., District Judge.

SMITH, J.

A county board of equalization levied property taxes in performance of duties imposed by statutes. Some of the statutory provisions allocated fiscal responsibilities to the county for care of its indigent residents in state institutions. The question is whether or not two of the levies violated this constitutional prohibition: "The state shall be prohibited from levying a property tax for state purposes." Art. VIII, § 1A, Constitution of Nebraska. The district court on a taxpayer's appeal from the county board of equalization adjudged the statutory provisions, former section 83-226 (Laws 1965, c. 478, § 15, p. 1545) and section 83-347, R. R. S. 1943, to be unconstitutional. Appeal to this court followed. We review evidence,

history of the constitutional section, operative statutes, previous legislation, and judicial gloss.

The levies were made in 1967 by the Douglas County Board of Equalization for ostensibly county purposes. The rates were .81 mill for "Beatrice State Home Fund" and 2.46 mills for "Mental Hospital Fund." Douglas County under the statutes owed the state (1) $685,539.63 for care of mentally handicapped wards in the home and (2) $2,082,009.24 for care of mentally ill patients (a) in Douglas County Hospital and (b) in state hospitals for the mentally ill.

A legislative bill in 1954 for a proposal to amend Article VIII of the Constitution read: "When a general sales tax, or an income tax, or a combination of a general sales tax and income tax, is adopted by the Legislature as a method of raising revenue, the State shall be prohibited from levying a property tax for state purposes." Senator Burney offered an amendment to add the words "General Fund" as follows: "* * * the state shall be prohibited from levying a property tax for state General Fund purposes." Floor debate on the offer was reported: "Duis: I object to the amendment inasmuch as it will be putting us half in and half out of the property tax field should a sales tax be enacted, * * *. * * * Tvrdik: Under this amendment of Senator Burney's, would that eliminate the special levies? Duis: * * * it would allow * * * special levies. Tvrdik: There is a possibility we would be continuing our special levies under it? Duis: That is right. * * * Burney: The funds excluded are * * * (presently irrelevant, special levies) and these levies for mental hospitals * * *. * * * Duis: * * * Is there anything that would prohibit the State Legislature from having the county make that levy on a county basis? Burney: It would be possible, I think; although Mr. James indicated to me that it might not be possible. In my own mind, I think it might not be possible. * * * Burney: * * * I do not want to write the Constitution so it must include the mental hospital fund * * *

and * * * others." The offer lost. Nebraska Legislative Journal (1954), LB 7, p. 101-104; Laws, 1954, c. 5, p. 64. The proposal was adopted as section 1A. The Attorney General took the position that the section prohibited the special levies. Rep. of Atty. Gen. of Neb. (1953-54) 406; Neb. Leg. Council, State and Local Finance (1962) 47, 241.

A provision obligating Douglas County for costs of care of indigent, mentally handicapped inmates of Beatrice State Home in this proceeding reads: "The superintendent shall certify * * * the amount, * * * due to such institution from the several counties, having inmates chargeable thereto, * * *. * * * The county board shall add such amount to the next county tax levy * * * and pay the amount received from said levy into the state treasury * * *." Laws 1965, c. 478, § 15, p. 1545, formerly § 83-226, R. R. S. 1943.

The fiscal responsibility of Douglas County for its indigent, mentally ill residents included (1) costs of direct care by the county and (2) average per capita costs of maintenance in state hospitals for the mentally ill. § 83-329.04, R. R. S. 1943; § 83-352, R. S. Supp., 1967. The latter costs were payable as follows: "The Director of Administrative Services shall * * * notify the county clerk * * * the amount, * * * such county owes for the care of such patients, * * * and charge the same to the county. * * * The county board shall add such amounts to the next county tax to be levied in the county, and pay the amount so levied into the state treasury, which amount the State Treasurer shall credit to the General Fund." § 83-347, R. R. S. 1943.

Previous legislation had allocated fiscal responsibilities in the above areas of public assistance. From 1885 to 1915 the superintendent of the Beatrice State Home paid expenses of transportation and clothing. For reimbursement the Auditor of Public Accounts drew upon the county treasurer. The statute provided: "* * * the said county shall annually assess and collect by tax the

amount necessary to pay said order * * *." Laws 1885, c. 52, § 8, p. 258. From 1915 to 1945 the Legislature required the county board to provide clothing and transportation, and to pay the superintendent $40 when he admitted an indigent. The money was to be used for "incidental expenses, such as dental work, repairs of clothing, etc., and burial expenses; * * *." It was the board's duty annually to pay the superintendent "such sum of money as added to the balance in his hand shall equal * * * forty dollars * * *." Laws 1915, c. 131, § 1, p. 295. In 1945 the Legislature prescribed "a sum to be fixed by the Board of Control which shall be an amount equal to the per capita cost of maintaining the patient * * *" in the home. Laws 1945, c. 245, § 2, p. 777. Section 3 of the act introduced the phrase "state tax levy" as follows: "The county board shall add such amount to the next state tax levy to be levied in the county, and pay the amount received from said levy into the state treasury, * * *." The phrase was replaced in 1965 by "county tax levy." Laws 1965, c. 478, § 15, p. 1545.

Early statutory provisions concerning care of indigent patients in the state hospital for the insane read: "The board of trustees shall * * * fix the sum to be paid per week for the board and care of patients * * *. The auditor shall * * * charge the same to said county; and the board of county commissioners shall add such amount to the next state tax, to be levied in said county, and pay the amount so levied into the state treasury." G. S., c. 31, §§ 46, 47. An amendment in 1935 replaced the phrase "state tax" with "county tax levy." Laws 1935, c. 181, § 1, p. 676. An amendment in 1937 returned to the original phrase. Laws 1937, c. 208, § 1, p. 835. The Legislature then declared all claims of indebtedness to the state under the 1935 act to be excess charges which it canceled. Provision was made for refunds to the counties. Laws 1937, c. 198, p. 821.

The early legislation concerning the state hospital for the insane had been challenged in State v. Douglas

County, 18 Neb. 601, 26 N. W. 378. A divided court sustained the act, the majority saying: "It is clearly within the power of the legislature * * * to require each county to maintain its own insane * * * or to pay the expense of the maintenance * * * in a hospital provided by the state. In this each state has adopted the course which to its legislature has seemed most judicious.

"It is claimed that the tax * * * is a state tax, and therefore the county has no authority to make the levy, and further, that such levy would be a violation of fundamental requirement that taxation shall be uniform throughout the state. While it is true that the hospital for the insane is * * * a state institution, yet, * * * maintenance of the insane is not necessarily a state burden, and therefore it is within the power of the legislature to require that the tax be levied and collected by each county for the purpose of reimbursing the state, * * *. * * * the tax is uniform throughout the taxing district in which it is levied. This is all that is required. * * *

"(For such maintenance) it is the duty of the * * * (county board) to levy the necessary taxes within the constitutional limit * * *."

The above views were reaffirmed in State v. Stanton County, 100 Neb. 747, 161 N. W. 264. In order for the state Constitution to restrict plenary power of the Legislature to tax, the language of restriction must be clear. State ex rel. School Dist. of Scottsbluff v. Ellis, 168 Neb. 166, 95 N. W. 2d 538.

The meaning of the constitutional prohibition is related to the national scene of state-local relations. The county has been viewed historically as a limited agency. Funding most, if not all, county functions has served state purposes. State government has remained largely free to supervise local administration of the property tax. Programs of state assistance to local units have been tied to effective, equitable use of the property tax by the local units themselves. Federal, state, and local governments have joined to combat conditions of

common concern. See, Adrian, State and Local Governments (2d Ed., 1967), 441; Fesler, The 50 States and Their Local Governments (1967), 13, 25, 152, 397, 580; Maddox, Issues in State and Local Government (1965), 247; Mitau, State and Local Government: Politics and Processes (1966), 519 to 524.

Although conceptual stratification of operations by state and local governments seems ill-suited to the reality of vertical integration, stratification is the central arch of the constitutional prohibition. We therefore conclude that a statute requiring a county to levy a property tax for purposes substantially local does not contravene the prohibition, although the statute commingles state and local purposes.

This court upheld levies similar to those now in suit against arguments that uniformity of distribution throughout the county was not enough without statewide uniformity. The court recognized that the discretion of the Legislature was wide; that the local purposes were substantial. See, State v. Douglas County, 18 Neb. 601, 26 N. W. 378; State v. Stanton County, 100 Neb. 747, 161 N. W. 264. In the present case neither one of the statutory sections contravenes the constitutional prohibition against state levy of a property tax for state purposes.

The judgment is reversed and the cause remanded with directions to dismiss the taxpayer's petition on appeal.

REVERSED AND REMANDED WITH DIRECTIONS.